# CHARLESTON.

## CLARK v. FIGGINS.

Submitted January 14, 1888.—Decided February 25, 1888.

1. FRAUDULENT CONVEYANCES—ASSIGNMENT—PRIORITY OF DEBTS.
   Where an assignment of personal property is made in fraud of creditors, they or any of them may in a court of equity have the same set aside. The creditor, who first files his bill, obtains thereby a priority and is entitled to be first paid from the proceeds of the sale of the property, if there are no valid prior liens. (p. 159.)

2. FRAUDULENT CONVEYANCES—ASSIGNMENT—PRIORITY OF DEBTS.
   Where a deed of personal property giving preference to creditors, who might accept its terms, was sought to be enforced in a court

of equity by creditors, who had accepted its terms, and certain creditors filed answers attacking it for fraud, such answers may be regarded as cross-bills, and if the said defendants should succeed, they would have the same preference, as if they had filed an original bill for the same purpose; and where they were defeated in the court below, and alone appealed, and procured a reversal of the decree, and the deed was declared void, they have priority, there being no liens before their answers in the nature of a cross-bill were filed, and are entitled to be first paid out of the fund. (p. 161.)

*Simms & Enslow*, *B. J. McCormick* and *T. H. Harvey* for appellants.

*W. S. Laidley* and *Payne & Green* for appellees.

JOHNSON, PRESIDENT :

This cause was once before this Court, and decided,—27 W. Va. 663, to which reference is made for a more complete statement. This Court then reversed the decree of the Circuit Court, holding the deed of trust preferring creditors fraudulent in fact. The cause was remanded, with instructions to the court to hold the fund in its hands until it should be determined to whom it should be paid, and then disburse it to those entitled thereto. It was then further held that, the deed having been declared void, the fund could not go to the plaintiffs by virtue of the deed. The court below held the deed valid.

The bill was filed by Clark & Co. and others, setting up the deed, and claiming to be preferred creditors, having accepted the terms of the deed, and also set up the fact that Ruffner Bros. and others, refusing to accept the terms of the deed, had sued out attachments and prayed that a receiver be appointed, and be instructed to take possession of the goods, sell them, and bring the proceeds into court, which was done. Ruffner Bros., Arnold & Abney, and Hurst, Purnell & Co. alone filed answers to the bill, and attacked the deed as fraudulent, took depositions to prove the charges in their respective answers, and the court held the deed valid, and decreed that the money should be paid to the plaintiffs who had accepted said deed. From this decree the said Ruffner Bros., Arnold & Abney, and Hurst, Purnell & Co. alone appealed to this Court, where the decree was

reversed, and the deed held fraudulent in fact, and cause remanded for the purpose above set forth.

In the Circuit Court the cause was heard on the mandate of this Court, and referred to a commissioner to ascertain and report "the amount of all claims and debts of the plaintiffs and defendants, all the attachment cases, giving a correct statement of all dates and amounts, with an abstract of the proceedings in each case." The commissioner reported a list of all the claims, and also that the deed of assignment was executed on the 2d day of October, 1882, and admitted to record the next day; that the chancery cause of A. R. Clark & Co. and others, who had accepted the terms of the deed, was commenced on the 26th day of December, 1882; that the attachment of Ruffner Bros. was issued on the 4th day of October, 1882, and went into the hands of the sheriff at 12 M. of that day, and was levied on the same day; that judgment was rendered in the case on the 24th August, 1883; that the attachment in the case was quashed on the 24th of November, 1882; that the attachment of Arnold & Abney was issued on the 4th of October, 1882, and was levied the same day. He also set out the date of the issuing and levying of all the attachments, also the dates of the recovery of the various judgments, and the dates of the issuing of the executions and shows that several were levied on the funds in the hands of the receiver. No execution was issued until the property and its proceeds were in the hands of the court.

The record shows that all the attachments were quashed. The cause was heard on the 16th day of August, 1886, and the court gave the whole fund, after paying costs and commissions, to Ruffner Bros., Arnold & Abney, and Hurst, Purnell & Co., holding that they, being the only defendants in the court below who had attacked the deed as fraudulent, and, being defeated there, were the only parties who appealed, and were successful in having the decree reversed and deed declared fraudulent and void, were, by virtue of their diligence, entitled to be first paid; and ascertained and declared that the whole fund would be insufficient to pay them. The decree recites that these three firms, by consent, agreed, as between themselves, there should be no priority.

From this decree A. R. Clark & Co., Miller, Cesner & Co.

and Maddux Bros. and others appealed, and seek to reverse the decree because they were the first and only creditors to attack the attachments, and bring the fund into court, before any valid lien was obtained on the goods or fund; that after the property was, at their suit, put into the hands of a receiver, where no creditor could obtain a lien, the fund should have been distributed among the creditors of Figgins, who first brought the fund into court, or at least ought to have been divided *pro rata* among all the creditors, and not given to the parties whose attachments were defeated.

Did the court err in its decree? In *Wallace's Adm'r* v. *Treakle*, 27 Gratt. 479, it appeared that the deed of H., for land, was set aside as fraudulent, at the suit of some of his creditors, and there was a decree after the death of H. for a sale of the land, and for an account of the debts of H. and their priorities. The report shows there was one judgment against H. before the deed was made. Some of the creditors in the bill were creditors by judgment, one a creditor at large. A number came in by petition before the decree, and a number came in before the commissioners, and by petition after the decree. The court held that, in distributing the fund, it should be applied—*first*, to pay the judgment recovered before the deed was made; *second*, to the judgments recovered before the bill was filed; *third*, to the creditors at large who joined in the bill; *fourth*, to the creditors by petition before the death of Henderson, in the order in which their petitions were filed; *fifth*, to all the other creditors *pro rata*.

In *Gordon* v. *Lowell*, 21 Me. 251, it was held that where a creditor has, through the instrumentality of a court of equity, sought out and discovered the property of his debtor, which he had before been unable to discover, and seized upon execution at law, he becomes entitled to a preference over other creditors,—to have his judgment first satisfied, even under the insolvent laws. See, also, *Edmeston* v. *Lyde*, 1 Paige 637; *Pallis* v. *Robinson*, 73 Mo. 201. Where a reconveyance is made in fraud of creditors, they, or any of them, may, in a court of equity, have the same set aside. The creditor who first files his bill obtains thereby a priority, and is entitled to be first paid from the proceeds of the sale of the land if there are no valid prior liens. *George* v. *Williamson*, 26 Mo.

190; *Bank* v. *Burke,* 4 Blackf. 141; *Petway* v. *Hoskin,* 12 Lea 107; *Corning* v. *White,* 2 Paige 567; *McDermutt* v. *Strong,* 4 Johns. Ch. 687; *Smith* v. *Lind,* 29 Ill. 24; *Lyon* v. *Robbins,* 46 Ill. 277; *Rappleye* v. *Bank,* 93 Ill. 396; *Claflin* v. *Foley,* 22 W. Va. 434; *Sweeny* v. *Sugar Co.,* 30 W. Va. 443 (4 S. E. Rep. 431.)

In *McDermutt* v. *Strong, supra,* Chancellor Kent said: " Though it be the favorite policy of this court to distribute assets equally among creditors *pari passu,* yet, whenever a judicial preference has been established, by the superior legal diligence of any creditor, that preference is always preserved in the distribution of assets by this court."

In *Smith* v. *Lind, supra,* the court said: " There is certainly some merit in searching records, discovering property, investigating titles and procuring sale of it, and all at the creditor's cost and expense, by which he ought to profit. It appeared by the affidavit that it was through the efforts and at the cost of the plaintiff a knowledge of the real estate sold was obtained, and it would be a hardship if another creditor, who has made no effort to this end, should enjoy the fruits of this diligence. Both the judgment creditors were in a position to use diligence. One only encountered the labor and expense. To him should be the reward. *Vigilantibus, non dormientibus, jura subveniunt.*"

In *Rappleye* v. *Bank,* 93 Ill. 402, Mr. Justice Sheldon said, in delivering the opinion of the court: " Although appellant might have proceeded and have avoided the trust-deed, and have subjected the estate thereby conveyed to the satisfaction of his judgment, or have had the lots sold on execution, he did not choose to assume that burden or expense. Appellee then assumed the undertaking of avoiding the trust-deed, and succeeded in effecting the removal of the incumbrance, encountering all the expense and labor thereof. It is through this proceeding of appellee that this estate conveyed by the trust-deed has been secured for application to the satisfaction of these judgments. Appellant now comes forward to appropriate to himself all the benefit. It does not seem just, and we think, under the equitable doctrine which courts apply in analogous cases, and the decisions in *Lyon* v. *Robbins,* 46 Ill. 279, appellee is fairly entitled to a preference, as a reward of its diligence."

Here the three firms to whom the reward of diligence was granted, filed their answers in the court below, and were the only defendants who did so, attacking the said trust-deed for fraud. They were opposed in this by the plaintiffs in that suit, who were seeking a preference by trying to show that the deed was valid. The other defendants contented themselves with standing idly by and seeing these active defendants carry on the contest at their own labor and expense. When these answers were filed the effect, *quoad*, these defendants claimed, was the same as if they had filed a bill for the purpose of having the trust-deed declared fraudulent, and they might be regarded in the nature of cross-bills. At that time there were no prior liens on the property, as all the attachments were subsequently declared void. These three firms were beaten in the court below, and decreed to pay costs with Dages & Co., Maddux Bros., H. N. Bailey, and Allemong, Bear & Co. Three of these parties were applied to by Ruffner Bros., Arnold & Abney, and Hurst, Purnell & Co. to join them in an appeal, and declined. None of the others came forward to join in the appeal. These three firms alone applied for the appeal, which was granted, and the decree reversed, and trust-deed set aside as fraudulent. It seems to us that this comes, in all its circumstances, within the maxim, *vigilantibus non dormientibus jura subveniunt.* There would be no reward to the vigilant, if these parties were now compelled to step aside, and let those who fought them persistently all through the cause, in both courts, and those who stood by and did nothing, take the fruits of their labor and expense, or were compelled to divide it with them.

The decree of the Circuit Court is correct, and is affirmed.

AFFIRMED.