# CHARLESTON.

## FOLEY v. RULEY *et al.*

Submitted June 18, 1901.   Decided November 23, 1901.

1. FRAUDULENT CONVEYANCE—*Creditor.*

   A creditor who, after his debtor has made a fraudulent or voluntary conveyance of his real estate, but before any other creditor files a bill in equity to set aside such conveyance, obtains a judgment in a court of law against such debtor, has a lien, by virtue of his judgment, upon the real estate so conveyed, from the date of the judgment, superior and prior to that of the creditor assailing the deed.   (p. 166).

2. CREDITOR'S BILL—*Parties—Date of Lien.*

   When all the creditors, assailing a fraudulent or voluntary conveyance, are judgment creditors, the lien of each dates from the time he obtained his judgment, and not from the date of the filing of his bill, answer or petition, attacking the fraudulent or voluntary conveyance, and the priorities among them must be settled according to the dates of their judgments.   (p. 169).

3. CREDITOR—*Priority—Fraudulent Conveyance.*

   A creditor at large is not entitled to priority over one who has obtained a judgment against the debtor, subsequent to the date of the fraudulent conveyance, but before the filing of the bill by such creditor at large to set it aside, although he is entitled to priority over one who obtains his judgment after the filing of such bill.   (p. 171).

Appeal from Circuit Court, Doddridge County.

Bill by B. W. Foley against F. J. Ruley and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

J. V. BLAIR, for appellant.

J. W. VANDERVORT, W. S. STUART and RAMSEY & IRELAND, for appellees.

POFFENBARGER, JUDGE:

The appellant, B. W. Foley, having obtained two judgments against F. J. Ruley and D. C. Ruley partners, doing business as F. J. Ruley & Bro., brought a chancery suit in the circuit court of Doddridge County to subject their real estate to the payment and satisfaction of said judgments, one of which was afterwards found by the commissioner to amount to three hundred and eighteen dollars and fifteen cents as of the 6th day of September, 1894, and the other to amount to seven hundred and eleven dollars and thirty-two cents, as of the same date. F. J. Ruley & Bro. were the owners of a tract of land containing one hundred and twenty-five acres and another containing twenty-six acres. F. J. Ruley and D. C. Ruley were the joint owners of other tracts of land containing respectively, two hundred and one and one-half acres, two hundred acres, one hundred and three and one-fourth acres, three hundred and fifty-six and one-half acres, one hundred and eighty-four and one-half acres, one hundred and nine acres and one hundred and twenty-nine acres. F. J. Ruley owned tracts containing respectively fifteen acres, one hundred and eight and one-half acres and one hundred and ninety-seven and three-fourths acres. The Ruleys as partners and as individuals were largely indebted to numerous persons, some of whom were lien holders by deeds of trust, and others by judgment, while still others were simply contract creditors who afterwards acquired judgments and came in by petition. After this suit was instituted, W. S. Stuart brought another suit against the same parties and some additional persons, alleging in his bill the recovery of a judgment against F. J. & D. C. Ruley, A. C. Holmes, and J. W. Hammond for the sum of one thousand and twelve dollars, to be discharged by the payment of five hundred and fifty-six dollars and forty-seven cents and fifteen dollars and eighty cents cost, but subject to a credit of forty-five dollars.

In addition to the necessary allegations, respecting the land here-inbefore mentioned, he charges in his bill that a tract of two hundred and twenty-seven acres of other land had been conveyed to Anne E. Ruley, wife of D. C. Ruley, by Thomas R. Douglas and C. H. Douglas for about the sum of two thousand two hundred and seventy dollars, of which about eight hundred dollars was paid by the said Anne E. Ruley, and the balance by F. J. Ruley and D. C. Ruley, and that except as to the said sum of eight hundred dollars, the conveyance to said Anne E. Ruley was fraudulent and voluntary on the part of F. J. & D. C. Ruley, and was made to hinder, delay and defraud the creditors of said F. J. & D. C. Ruley. This last bill was filed on the first Monday in February, 1894. A. C. Holmes and J. W. Hammond had become liable for the Stuart judgment and several others, by having become sureties in forthcoming bonds executed by F. J. & D. C. Ruley, in which default had been made and thereupon judgments were taken by motion upon notice as provided by law. They were made parties to the first bill and Holmes filed his answer thereto at March rules, 1894. In that answer he made the same allegation of fraud as to the two hundred and twenty-seven acre tract of land and prayed that the deed might be set aside as fraudulent and the land subjected to sale to satisfy the debts of F. J. & D. C. Ruley. The two causes were consolidated and referred to commissioner M. F. Snyder, who completed and filed his report on the 16th day of July, 1894. On the 6th day of September, 1894, F. J. & D. C. Ruley filed their joint answer under oath to the bills in the consolidated causes, in which they admit that Anne E. Ruley had paid only eight hundred dollars of the purchase-money of said two hundred and twenty-seven acre tract of land, and that the entire purchase-money was about three thousand four hundred dollars, and aver that she would be entitled to about one-third of the land and they to the balance of it. On the same day the court, after overruling the exceptions to the report of the commissioner, confirmed it, adjudicated the amounts and priorities of the several liens upon the several tracts of land, except the two hundred and twenty-seven acre tract of land, and decreed the sale of all the land of all the lien debtors, except said two hundred and twenty-seven acres. As to that tract the following provision was made in the decree: "Any decree concerning the tract of two hundred and twenty-seven acres conveyed to the defendant Anne

E. Ruley as set forth in the bill of complaint in the second named cause is postponed by the court until after the sale of the said lands of the said Ruleys above decreed to be sold." From this decree, the Ruleys obtained an appeal to this Court and the cause was decided here April 28, 1897, and is reported in 43 W. Va. 513. The decree was affirmed. At December rules, 1897, G. W. Farr, filed his petition in the causes, alleging a judgment in his favor against F. J. Ruley for the sum of twenty-six dollars and thirty cents and attacking the conveyance of the two hundred and twenty-seven acres of land as fraudulent. At the same time W. S. Stuart, administrator of the estate of C. J. Stuart, filed his petition, setting up a decree in his favor for four hundred and thirty dollars and eighteen cents against the Ruleys, Holmes and Hammond and likewise attacking the conveyance of the two hundred and twenty-seven acre tract. At the same time J. B. Markey filed his petition setting up a decree in his favor for two hundred and eighty-four dollars and sixty-seven cents against the Ruleys, Holmes and Hammond and attacking said conveyance as fraudulent. At the same time the Merchants National Bank filed its petition alleging a decree in its favor against the same parties for six hundred and twenty dollars and fifty-seven cents and attacking said conveyance. The amounts set up in these petitions had been adjudicated to the petitioners in the decree of the 6th day of September, 1894, and the lands of the defendant, except the two hundred and twenty-seven acre tract and the lands of A. C. Holmes, had been sold under that decree but the proceeds had been insufficient to pay these amounts, as well as the sums decreed to Foley who had filed the first bill. Farr's claim was made the eleventh lien on the lands of F. J. Ruley. The claims of Stuart, administrator, and Markey had been made the tenth lien on the three hundred and fifty-six and one-half acre tract and the ninth on all the other lands of the Ruleys except the one hundred and nine acres upon which they were the seventh. The claim of the Merchants National Bank of West Virginia had been made seventh lien on the three hundred and fifty-six and one-half acres and sixth on the other lands except the one hundred and nine acres. The three hundred and eighteen dollars and fifteen cents claim of Foley was one of the eighth liens on the three hundred and fifty-six and one-half acre tract, seventh on all the other lands except the one hundred and nine acres upon which it was one of the sixth. The

seven hundred and eleven dollars and thirty-two cents claim of
Foley was made the ninth lien on the three hundred and fifty-
six and one-half acre tract, eighth on all the other lands except
the one hundred and nine acre tract upon which it was the sev-
enth.   On the first day of December, 1897, the court entered
another decree in which it set aside, annulled and vacated the
deed by which Douglas and wife conveyed to Anne E. Ruley the
two hundred and twenty-seven acre tract of land as to thirteen-
seventeenths of said tract of land, and decreed that Anne E.
Ruley have and hold the other four-seventeenths of it.   It was
further decreed that upon said thirteen-seventeenths of the land
W. S. Stuart had a lien for one hundred and forty-three dollars
and twenty-five cents subject to a credit of $———.   Commis-
sioners were appointed to go upon and partition the land.   On
the 22d day of March, 1898, the report of the commissioners
gave to Anne E. Ruley fifty-three and one-half acres of the
two hundred and twenty-seven acre tract and was confirmed.   On
the same day Anne E. Ruley appeared and docketed her motion
and notice to set aside the decree of December 1, 1897, set-
ting aside and vacating the deed as to the thirteen-seventeenths
of the two hundred and twenty-seven acre tract of land, and she
was given leave to file her separate answer which was done.   The
errors for which it was asked that the decree be set aside, were
that prior to the March term, 1898, when the report of the com-
missioners was confirmed, D. C. Ruley, the husband of Anne E.
Ruley, had departed this life, leaving many children and heirs
at law surviving him and the suit had not been revived; that
by the decree of September 6, 1894, the whole two hundred and
twenty-seven acres of land was, in effect, if not in terms, ascer-
tained to be the property of said Anne E. Ruley and not subject
to any lien of the creditors of F. J. & D. C. Ruley; and that the
deed for said tract of land retains on its face a lien for purchase-
money and the grantor is not made a party to the bill and there
is no averment in the bills that the lien has been discharged.   In
her answer, she denies that there was any fraudulent conduct on
her part in reference to said land and insists that she had paid
one thousand dollars on account of that land and is entitled to
more than four-seventeenths of it and denies the allegation in
the bill that the consideration of one thousand one hundred and
seventeen dollars and seventeen cents, mentioned in the deed as
the consideration for the land, was fraudulent or false.   The

causes were then revived against the widow, administratrix, and heirs at law of D. C. Ruley. At June rules, 1898, W. S. Stuart filed an amended and supplemental bill and bill of revivor, reciting the former proceedings had in the two causes and again alleging the fraudulent conveyance as to thirteen-seventeenths of the two hundred and twenty-seven acre tract of land. On the 25th day of July, 1898, an order was made showing the filing of a petition by W. L. Stinespring and B. W. Foley asking to be admitted as parties plaintiff to the case made by the amended and supplemental bill and bill of revivor. The petition of Stinespring sets up a claim of one thousand dollars which has been adjudicated to him by the decree of September 6, 1894,, and alleges the fraudulent conveyance of the two hundred and twenty-seven acres of land. The petition of Foley sets up the two amounts decreed to him hereinbefore mentioned and four other small amounts and alleges the fraudulent conveyances as aforesaid. On the first Monday in July, 1898, the amended and supplemental bill and bill of revivor was taken for confessed as to all the defendants except Anne E. Ruley and the infant defendants. Mrs. Ruley appeared and filed her demurrer. On July 26, 1898, a decree was entered ordering that the causes be revived and proceed against the widow and heirs of D. C. Ruley, deceased, appointing a guardian *ad litem* for the infant defendants, overruling the demurrer of Anne E. Ruley to the supplemental bill and bill of revivor, refusing to disturb the decree of December 1, 1897, setting aside and vacating the decree of March 22, 1898, ordering Thomas P. Douglas to file a release of his vendor's lien, it having been shown that the same had been satisfied, and allowing Anne E. Ruley thirty days in which to file her answer. On the 11th day of August, 1898, Foley sued out process upon his petition which was afterwards returned executed, but there was no appearance except as to the infant defendant by their guardian *ad litem* and as to Anne E. Ruley, whose answer to the supplemental and amended bill is substantially the same as her former answer, with the additional averment that she had owned said two hundred and twenty-seven acres of land, occupied and used the same as her own for more than five years next before the institution of the plaintiff's suit and before the filing of the original bill. On the 26th day of November, 1898, a decree was entered in which the partition made by the commissioners was again confirmed. It was further

adjudged, ordered and decreed that the claim of W. S. Stuart for five hundred and fifty-nine dollars and forty-one cents subject to a credit of eighty-three dollars and ninety-one cents, his claim for two hundred and thirty-six dollars and twenty-seven cents, subject to credits of one hundred and thirty-four dollars and thirty-one cents and thirty-five dollars and forty-four cents, and his claim for one hundred and forty-three dollars and twenty-five cents, subject to a credit of eighty dollars, constitute liens equal and first in priority on the one hundred and seventy-four acres and thirty-four poles of land being the residue of the two hundred and twenty-seven acres after assigning to the widow, Anne E. Ruley, her portion of it; that the claim of J. B. Markey for two hundred and eighty-four dollars and sixty-one cents, the claim of the Merchants National Bank for six hundred and twenty dollars and sixty-seven cents, subject to a credit of two hundred and ninety-nine dollars and ninety-four cents realized thereon from the proceeds of the sales of the other lands, the claim of W. S. Stuart, Adm'r, for the sum of four hundred and thirty dollars and eighteen cents subject to the credit of six dollars and fifty-three cents, constitute liens equal and second in priority on said land; that the sum of one hundred and forty-one dollars and sixty-two cents in favor of J. V. Blair, the sum of five hundred and eighty-nine dollars and forty-three cents in favor of W. L. Stinespring and the five sums in favor of B. W. Foley aggregating one thousand two hundred and sixty-nine dollars and ninety cents, subject to a credit of two hundred dollars and forty-eight cents, constituting liens equal and third in priority on said land; that the sum of twenty-six dollars and twenty-seven cents in favor of Farr constitutes the fourth lien on one-half of said land; that the purchase-money of said land was paid out of the funds of F. J. & D. C. Ruley, and the widow was therefore not entitled to dower in said land; and that in default of payment of the several sums decreed to be liens upon said land within thirty days from the rising of the court, said land be sold. From the sale of said land two thousand and eighty-eight dollars was realized, and on the first day of April, 1899, the court confirmed the sale and decreed that the costs be paid out of said fund and that the residue be applied in discharge of the liens on the land in the order of priority fixed in the decree of November 26, 1898. As to these last two decrees an appeal and *supersedeas* was allowed by this Court upon the

petition of B. W. Foley, who insists that the court erred in changing the order of priority, fixed in the decree of September 6, 1894, under which two of his claims, amounting to more than one thousand dollars, would have been out of the proceeds of said one hundred and seventy-four acres and seventy-four poles of land.

The record as it appears here now is not clear as to whether all the debts decreed to be paid out of the proceeds of the one hundred and seventy-four acres of land are partnership liabilities. The report of the commissioner is not in the record. The debts decreed to Stuart, the Merchants National Bank, Blair, Stinespring and Foley are all partnership debts. By reference to the record as it appears in the case of *Foley* v. *Ruley*, reported in 43 W. Va. 513, it is found that the debts decreed in favor of J. B. Markey and W. S. Stuart, Adm'r, were originally liabilities of F. J. Ruley & Bro., the firm. Hence, all the claims to which preference was given over the appellant in the two decrees of which he complains are of that class of liabilities to which his own belongs. It having been shown that the land was purchased with money belonging to the firm and was conveyed to Anne E. Ruley with intent to hinder, delay and defraud the creditors of the firm, the money thus diverted from the partnership assets, the firm being insolvent, was not thereby converted into individual property. It remained a part of the assets of the firm. *Darby & Co.* v. *Gilligan*, 33 W. Va. 246; *Baer's Sons* v. *Wilkinson*, 35 W. Va. 422. In the latter of these cases it is held that where one of two partners undertakes to convey the whole firm property by a deed in which his individual debts, or debts other than those of the firm, are given preference, without consulting the other partner, though present or within easy reach, and without ratifying or concurring in such assignment, is ineffectual to deprive the creditors of the firm of their right to have the social assets applied to pay the social debts. Syllabus 2. The court below was right, therefore, in applying the proceeds of this land to the payment of the firm liabilities.

Did it err in changing the order of preference or priority, fixed by the decree of September 6, 1894, which was affirmed by this Court upon appeal? That decree determined the liens and the order of priority upon all the lands except the two hundred and twenty-seven acre tract. As to that the decree recites that all action is deferred or postponed. It did not fix the status

of any creditor with reference to that tract of land, although, at the time that decree was made and entered, the answer of F. J. & D. C. Ruley admitted that the greater portion of the purchase-money had been paid by them or by F. J. Ruley & Bro., and the bill had been taken for confessed as to Anne E. Ruley. The reason for this postponement may have been the probability that the proceeds of the other lands would be sufficient to pay all the debts and leave the defendant, Anne E. Ruley, in the enjoyment of the property she claimed, for as between F. J. & D. C. Ruley and her the conveyance was good and could not be disturbed, but was not good against their creditors. However, this may be, that decree gave no creditor any lien or interest in that tract of land. The contention, therefore, that the order of priority given by the decree of September 6, 1894, was disturbed or changed by the subsequent decrees made in these causes is untenable. No such order had been established as to this land. As to it the court could do nothing other than take up the record of the causes, when ready for the final hearing, and decree according to the rights of the parties as then disclosed.

It is contended by counsel for appellant that the court erred in not compelling Stuart, Adm'r, Markey, and the Merchants National Bank to resort to the real estate of A. C. Holmes and J. W. Hammond for the payment of their debts, because they had liens upon two funds, while Foley, Blair and Stinespring had liens only upon the real estate of the Ruleys, and, first, upon the social property of the firm, it appears that the liability of Holmes was that of surety for F. J. Ruley & Bro. This Court held in *McClaskey* v. *O'Brien* and *Hart* v. *O'Brien,* 16 W. Va. 791, that "Marshalling should not be enforced to the prejudice of a third party. As subrogation is in equity, it will not be enforced when the effect will be to prejudice or impair the rights of third persons, it being well settled that where both parties have an equal claim to the consideration of a chancellor, the law will be suffered to take its course." The right of a creditor who has the power to resort to one of two funds to compel another creditor who has a lien upon both to resort to the other fund is a mere equity. The right of a surety to be subrogated to the lien of the creditor against his principal is also an equity and one of at least equal dignity with the other. The court did not err in exempting from sale the property of Holmes, if it was right in giving preference over the claim of Foley to the debts for which

Holmes was bound as surety, which is the subject of the next inquiry.

From the statement of the case hereinbefore given, it will be seen that Stuart, in his original bill, filed in February, 1894, made the first attack upon the deed from Douglas to Anne E. Ruley. The next attack was made upon it in the answer of A. C. Holmes, filed at March rules, 1894. The next was in the petitions filed by Farr, Stuart, Adm'r, Markey and the Merchants National Bank, all filed at the same time, on the first Monday in December, 1897. The next was by Stuart in his amended and supplemental bill and bill of revivor, filed at June rules, 1898. Following this are the petitions of Stinespring and Foley filed on the 25th day of July, 1898. How the claim of J. V. Blair became classed with these does not appear. The decree recites that the cause was heard on his petition and answer but they are not found in the record, and when they were filed does not appear. Except as to the small claim of Farr, the order of priority established in the decree corresponds with the order in time of the filing of these papers, assailing the validity of the deed. The Farr claim was postponed because it was not a firm liability and he had no right to participate in the proceeds of the social property until after the payment of the firm debts. The decree so states and provides.

Coming now to the real question in the case, namely, whether the creditors are entitled to priority as to the land fraudulently conveyed, according to the dates of their respective attacks upon the fraudulent conveyance, or whether, they being all judgment creditors, they shall have priority according to the dates of their judgment, it is found that the decisions do not present the matter very clearly. This is probably because the question does not very often arise and the courts have not had occasion to pass upon it as a matter of serious contention between litigants. It has frequently been held that the creditor who first files his bill obtains thereby a priority and is entitled to be first paid from the proceeds of the sale of the property, the fraudulent conveyance of which is set aside, if there are no valid prior liens. *Clark* v. *Figgins,* 31 W. Va. 156. A deed may be assailed as fraudulent by bill, answer or petition, and preferences thereby acquired, each creditor obtaining a lien from the time he makes his attack upon the deed. *Sweeny* v. *Sugar Co.,* 20 W. Va. 443. Now, if by prior lien, is meant the lien of a judgment recovered before

the date of the conveyance, this is all very plain. Such a judgment is clearly a lien upon the property and prior to that of the attacking creditor. But how stands the case with a creditor who obtains his judgment after the date of the conveyance? Has he a lien upon the property which has been fraudulently or voluntarily conveyed away? If so, and it was recovered before any attack was made upon the fraudulent deed, that judgment would also be a prior valid lien. All the creditors contending here are judgment creditors. None of them acquired their judgments when the land in question was in the hands of the judgment debtors. The title to it never was vested in them by deed. Their money paid for it but it was conveyed by Douglas directly to Anne E. Ruley. If these judgments were liens upon that land before the deed was set aside, the decree changing the order of priority is erroneous. If they were not liens upon it, the decree is right. Sections 5 and 6 of chapter 139 of the Code reads as follows: "Every judgment for money rendered in this State heretofore or hereafter, against any person, shall be a lien on all real estate of or to which such person shall be possessed or entitled at or after the date of such judgment, or, if it was rendered in court, at or after the commencement of the term at which it was so rendered; except as follows: No judgment shall be a lien on real estate against a purchaser thereof for valuable consideration without notice, unless it be docketed according to the third and fourth sections of this chapter in the county wherein such real estate is, either within sixty days next after the date of the judgment or before a deed therefor to said purchaser is delivered for record to the clerk of the county court. *Provided,* That the judgment of a justice of the peace shall not be a lien on real estate as against such purchaser, until the same is docketed as aforesaid." The land in question is proceeded against as the land of F. J. Ruley & Bro. It having been purchased with their money, and it having been virtually turned over to Anne E. Ruley by them voluntarily and for no consideration deemed valuable in law, it must be regarded as their land so far as the rights of creditors are concerned, for, under section 1 of chapter 74 of the Code, such conveyance of real estate or transfer of personal property is void as to creditors. It will be noticed that the lien of a judgment on real estate is good as to everybody except a purchaser for valuable consideration without notice, and good against such purchaser if docketed as required by law. While

the statute says a voluntary conveyance or transfer is void as to creditors, such statutes have been held to be not so far void as to give a judgment creditor a lien upon the property so conveyed. These cases hold that a fraudulent conveyance is not void but voidable, and that it is valid as between the parties and as to the plaintiff until attacked. Black on Judgments, s. 423, and cases there cited. In the same section this author says: "But on the other hand, many well considered cases hold that a subsequent judgment is a lien on land previously conveyed in fraud of creditors, and that the judgment creditor may treat the conveyance as simply void, and may rest exclusively upon his legal remedies, without invoking the aid of a court of equity; that is, he may proceed to sell the land upon execution leaving it to the sheriff's vendee to impeach the fraudulent conveyance." While a judgment could not be so enforced by execution in this State, and resort must be had to a court of equity to subject to sale the real estate of the judgment debtor and to set aside fraudulent or voluntary conveyances, no good reason appears why such conveyances, in adjusting priorities among creditors, should not be treated as void as the statute says it is, nor why the statute making every judgment a lien upon the real estate of the debtor should not be held to give such a lien in the case of a judgment subsequent to the execution of a fraudulent conveyance. The exception made in section 6 tends to show such a legislative purpose. If, such a judgment is not a lien upon such property, for what purpose or reason did the legislature make that exception?

While the courts of different states are not agreed upon the question, we have a decision of the court of appeals of Virginia, in *Wallace* v. *Treakle,* 27 Grat. 479, which is directly in point. That decision ought to have peculiar force with us for the reason that our statutes, relating to judgment liens and fraudulent conveyances, are practically the same as those of Virginia. They had their origin in Virginia. In addition to section 1 of chapter 74 and sections 5 and 6 of chapter 139, section 2 of chapter 133 must be considered. That section is as follows: "A creditor, before obtaining a judgment or decree for his claim, may institute any suit to avoid a gift, conveyance, assignment, or transfer of, or charge upon, the estate of his debtor, which he might institute after obtaining such judgment or decree, and he may in such suit have all the relief in respect to said estate, which he

would be entitled to after obtaining a judgment or decree for the claim which he may be entitled to recover." That is the statute which is construed in *Wallace* v. *Treakle,* and that is the first case in which a construction of that statute is given. In the opinion Judge Christian says, "It is plain by the very terms of this statute the creditor, assailing successfully a fraudulent conveyance, is placed in the same position, and is entitled to the *same relief,* as if he had already obtained a judgment or decree against his debtor. What is that position, and what is that relief? Plainly a lien upon the property of the debtor, just as if he had, at the filing of his bill, already obtained a judgment or decree. The statute places the creditor, who assails a fraudulent conveyance, if he succeeds in vacating it, in the position of one already having obtained a judgment or decree, and his lien subsists from the time of filing his bill." In that case one judgment had been acquired before the date of the fraudulent conveyance. Other judgments had been recovered after the date of the deed and before the bill was filed and there were creditors at large. The court held that in distributing the funds it was to be applied, first, to pay the judgment recovered before the deed was made. Second, to the judgments recovered before the bill was filed. Third, to the creditors at large who joined in the bill. Fourth, to the creditors by petition before the death of Henderson in the order in which their petitions were filed. Fifth, to all the other creditors *pro rata.* No West Virginia case has been found in which this question has been discussed, but the argument of Judge Christian is a strong one. The statute gives the creditor such relief in respect to the estate as he would be entitled to after obtaining a judgment or decree for the claim which he might be entitled to recover. The language of the statute puts the attacking creditor upon the ground occupied by the judgment creditor, and by construction the court of appeals of Virginia and this Court have determined that it gives the attacking creditor a lien, because it gives him the same relief which he would be entitled to after obtaining a judgment for the claim. Therefore, in so construing that statute the courts hold that a judgment is a lien upon real estate fraudulently conveyed by the debtor before the date of the judgment. Obtaining judgment against the debtor gives a lien. Filing a bill under section 2 of chapter 133 to set aside the fraudulent conveyance gives the attacking creditor a lien. That is the starting point of all these

decisions. If judgment is recovered before such a bill is filed the judgment creditor has priority; if, after the bill is filed, the attacking creditor has priority. In reaching this conclusion, the equitable principle, that the diligent are to be favored, is not overlooked. A judgment creditor, without filing a bill to set aside the fraudulent conveyance or to enforce the lien of his judgment and incidentally set aside the fraudulent conveyance, could never satisfy his judgment out of the property. By his failure to institute such proceedings the grantee in the fraudulent conveyance would keep the property and the judgment creditor would never be paid. To obtain relief it is just as necessary that he come into a court of equity, as it is that the creditor at large file his bill under said section 2. He who files his bill first shows the greater diligence in respect to that matter. But the judgment creditor having asserted his claim in a court at law, before the creditor at large took any step whatever, it may be doubted whether the latter has been the more diligent or has been first to assert his claim. However that may be, the construction put upon the statute in question in *Wallace* v. *Treakle*, which has unodubtedly been followed in this State, although the question has never come up for adjudication in this Court, is so logical and reasonable and so well considered that it ought not to be disturbed. It is a case out of which this whole doctrine of preferences acquired under said statute arises. It goes no further than is here stated. This Court has never extended or enlarged it, nor in any way altered the rule as there laid down. To change it now would be to tear up the very foundation of the whole doctrine. See *Clark* v. *Figgins*, 31 W. Va. 156.

The conclusion is that the decree complained of is erroneous. The judgment creditors must be given priority according to the dates of their judgment against the firm of F. J. Ruley & Bro., instead of according to the date of the filing of pleadings attacking the fraudulent conveyance. Said decree must, therefore, be reversed and the cause remanded to the circuit court of Ritchie County to be further proceeded with according to the principles herein announced and further according to the rules and principles of equity.

*Reversed.*