# CHARLESTON.

THE GEISER MANUFACTURING COMPANY v. CHEWNING.

Submitted January 19, 1903.   Decided March 28, 1903.

1. PROCESS—*Equity Declaration.*

   The process to commence a suit in equity, or an action at law, is a writ commanding the officer to whom it is directed, to summon the defendant to answer the bill or action. The date of the writ is *prima facie* evidence of the time of its issuance. When the bill or declaration is filed in the suit or action, it relates back to the issuance of the writ. (p. 533).

2. TRUST DEED—*Creditor—Judgment.*

   J. W. C. executed a deed of trust, bearing date on the 31st day of May, 1897, to secure the payment of an alleged debt to his brother. On the 15th day of June, 1897, G. M. Co., a creditor of J. W. C., commenced its suit; and, at the August rules following, filed its bill against J. W. C. and others, to set aside the deed of trust as fraudulent, and to subject the property thereby conveyed to the payment of its demand. On the 21st day of June, 1897, B .B. recovered a judgment against J. W. C.; and on the 7th day of July, 1897, commenced his suit; and, at July rules of the same year, filed his bill against J. W. C., and others, for the purpose aforesaid. The deed of trust was set aside by decree entered in both suits, heard together. *Held:.* The demand of G. M. Co. has priority over the judgment in favor of B. B.; and is entitled to be paid in full out of the proceeds of the sale of the property, before the judgment of B. B. or any part thereof shall be paid. (p. 536).

3. COMMISSIONER—*Interlocutory Decree.*

   Where a commissioner to whom a cause has been referred by an interlocutory decree, in his regular proceedings to adjust, settle and report the matters so referred, takes the depositions of witnesses to enable him to act upon the subject, his general notice of such proceedings is sufficient, without a special notice from him or the adverse party that such depositions will be taken. (p. 526).

Appeal and *supersedeas* from the Circuit Court, Monroe County.

Action by Geiser Manufacturing Company against J. W. Chewning, *et als.* Judgment for plaintiff and defendant appeals.

*Modified and Affirmed.*

JOHN OSBORNE, for appellees.

R. L. CLARK and J. D. LOGAN, for appellants.

MILLER, JUDGE:

This, with the cause of Baldwin Ballard against W. S. Chewning and others, was here once before, upon appeal granted to defendant, W. S. Chewning, from the decree of the circuit court of Monroe County, made in said causes, heard together, on the 23rd day of March, 1899. Said decree decides that a certain deed of trust, executed by defendant, J. W. Chewning, to L. P. Dunn, trustee, bearing date on the 31st day of May, 1897, to secure to W. S. Chewning, a brother of the grantor, the payment of an alleged demand for two thousand seven hundred and fifty dollars was and "is fraudulent *per se,* on the face thereof, and is void," and was and is set aside; and it is further adjudged, ordered and decreed that the plaintiffs, (Geiser Manufacturing Company and Baldwin Ballard), have a lien on the land in the bills and proceedings mentioned (being the same lands in said trust deed described) for the amounts of their respective demands; that they have a right to enforce the same in said causes; and that said causes be referred to W. McD. Johnston, a commissioner of the said circuit court to ascertain and report the amount of real estate, owned by the defendant, J. W. Chewning; what liens, if any, were against said real estate, prior to the institution of the suits of the plaintiffs; the amounts the plaintiffs are entitled to recover from the defendant, J. W. Chewning; and any other matter deemed pertinent by himself, or required by any party in interest." That decree was affirmed by this Court. 49 W. Va. 508.

After the said causes had been remanded to the circuit court, Commissioner Johnston executed said order of reference, and ascertained and reported, as "Class 1," a judgment in favor of *Baldwin Ballard v. J. W. Chewning,* recovered on the 21st day of June, 1897, for two hundred and ninety-four dollars and eighty-eight cents, with interest from date last aforesaid and two dollars and thirty-five cents costs, amounting, in the aggregate on the 15th day of October, 1901, to three hundred and seventy-three dollars and sixty-four cents; in "Class 2," a debt due The Geiser Manufacturing Company, amounting on said

15th day of October, 1901, to six hundred and fifty-six dollars and eighty-one cents; and a judgment in favor of E. N. Crews, agent for C. V. Crews against J. W. Chewning, L. Rowan and J. D. Logan for ninety-six dollars and eighteen cents, rendered on the 4th day of January, 1898, which is reported to be for the use and benefit of J. L. Rowan and J. D. Logan, and on the 15th day of October, 1901, amounted to one hundred and seventeen dollars and ninety-six cents.

The said Geiser Manufacturing Company excepts to the report because it gives said Baldwin Ballard a priority over said company; and because said report includes in "Class 2," the said judgment in favor of E. N. Crews. Said J. W. Chewning excepts to said report which finds the said balance of six hundred and fifty-six dollars and eighty-one cents against him in favor of the said company, when the proof taken and filed shows that said debt is entitled to a credit of about five hundred dollars. Commissioner Johnston, among other things in his said report, says: "Your commissioner would further report that the attorney for J. W. Chewning contends that the debt due the Geiser Manufacturing Company should be credited by four hundred dollars instead of the one hundred and eighty-five dollars, and that the sale of the trustee G. W. Graves was void by reason of the fact that the trustee became the purchaser of the trust property; your commissioner believing the question raised to be one of law respectfully refers the matter to the court for a decision. The testimony taken in reference to this matter as well as all testimony used before your commissioner in taking of said accounts is herewith returned as a part of this report." The testimony referred to in said report are the depositions of W. C. Harvey, Jr., and J. W. Chewning. The caption thereof states that they were "taken before W. McD. Johnston, Commissioner of Monroe circuit court, at his office in the town of Union, West Virginia, on the 26th day of September, 1901, pursuant to notice for the taking of certain accounts in the chancery cause of Baldwin Ballard against J. W. Chewning *et als.,* and the Geiser Manufacturing Company against the same now pending in the circuit court of Monroe County, West Virginia., which are to be read and used as evidence in the taking of said accounts and on the hearing of said cause."

The Geiser Manufacturing Company also excepts to the read-

ing of these depositions for any purpose because, as it alleges, it had no notice of the time or place of the taking thereof, and no such notice appears in the record.

On the 31st day of October, 1901, the said circuit court heard said two causes together, upon the papers formerly read therein, the mandate of the Supreme Court of Appeals of West Virginia, the report of Commissioner W. McD. Johnston, with exceptions to said report by the said Geiser Manufacturing Company, and by the defendant, J. W. Chewning, the depositions of witnesses taken before said commissioner with the exceptions to the reading of the depositions of W. C. Harvey and J. W. Chewning by the Geiser Manufacturing Company, the petition of J. D. Logan filed that day by leave of the court, and waiver of process by the defendants to said petition, and was argued by counsel; whereupon the court sustained the exception of the Geiser Manufacturing Company to said report, and overruled the said exception of J. W. Chewning taken thereto; and also sustained the exceptions of the Geiser Manufacturing Company to said depositions of W. C. Harvey and J. W. Chewning and excluded said depositions. And without recommitting said report, the court corrected the same, and thereupon adjudged, ordered and decreed that the said company and parties should recover from the said J. W. Chewning as follows, to-wit: The Geiser Manufacturing Company, six hundred and fifty-six dollars and eighty-one cents; Baldwin Ballard, three hundred and seventy-three dollars and sixty-four cents; J. D. Logan and J. L. Rowan, one hundred and seventeen dollars and ninety-six cents; and J. D. Logan, thirty dollars and sixty-five cents. Each of said sums are to bear interest from the 15th day of October, 1901, and said Ballard and the Geiser Manufacturing Company are decreed their respective costs in their said suits. It is further decreed that unless said J. W. Chewning shall pay said sums as required, within thirty days after the rising of the court, then John Osborne and J. D. Logan, who were, by the court, appointed special commissioners for the purpose, were authorized and directed to sell the lands in the bills and proceedings mentioned, at public auction, after giving the notice prescribed. The decree further provides that out of the proceeds of the one hundred and fifteen poles of land, the debt of J. D. Logan shall be first paid, and that the proceeds of the

sale of the residue of said real estate shall be paid *pro rata* upon the debts hereinbefore decreed, except the one hundred and seventeen dollars and ninety-six cents decreed to J. L. Rowan and J. D. Logan, which shall be paid *pro rata* as to fifty dollars and eighty-seven cents part thereof only. And the defendant, J. W. Chewning, tendered his amended answer to the bill of complaint of the Geiser Manufacturing Company in the nature of a cross bill, to the filing of which amended answer the Geiser Manufacturing Company objected, and the court refused to permit the same to be filed.

From this last decree the said J. W. Chewning was allowed an appeal, who assigns as error: That the circuit court erred in overruling his exceptions to the commissioner's report; that he should have been allowed credit for four hundred and forty dollars instead of one hundred and ninety-three dollars on the debt decreed to the Geiser Manufacturing Company; that the court erred in sustaining exceptions to the depositions of W. C. Harvey and J. W. Chewning, and refusing to allow them to be read; that said court erred in failing to recommit the cause to the commissioner with instructions to retake said depositions; erred in rejecting appellant's amended answer; erred in pronouncing final decree without making G. W. Graves, trustee, a party to the cause; erred in not considering appellant's answer, filed in the cause at the October term, 1898; and erred in not holding void the sale of the engine mentioned in the proceedings of said cause.

The question presented to the circuit court by the bills in each of said two causes was and is the alleged fraudulency of the said deed of trust. The court, on the first hearing, "without passing on the objections of W. S. Chewning to the reading of the answers, interrogatories and answers thereto, (no objections being set out in the record,) and without passing on the evidence of the witnesses, examined in the case, was of opinion that the deed of trust executed by J. W. Chewning to L. P. Dunn, trustee, is void on its face; that the same shall be annulled and set aside, and that the plaintiffs have a lien on the land in the bill and proceedings mentioned, for the amount of their respective debts; and that they have the right to enforce the same in this cause."

The court expressly adjudicated three matters, viz., that the

said deed of trust was and is void upon its face, that it be and was annulled and set aside, and that the plaintiffs, Baldwin Ballard and the Geiser Manufacturing Company, have liens on the land in their bills and proceedings mentioned, (being the lands in the said trust deed described,) for the amounts of their respective demands; and that they have the right to enforce the same against said lands in their said causes; but the court did not pass upon, or adjudicate, any other matter or thing.

The indebtedness of said J. W. Chewning to the Geiser Manufacturing Company is evidenced by his three several promissory notes, two for two hundred and twenty dollars each, and one for two hundred and ten dollars, each bearing date on the 29th day of July, 1895, and payable to said company, on the first day of December, 1895, 1896, and 1897, respectively, with exchange and interest. These notes were given for the purchase price of a certain Geiser steam engine on wheels which said J. W. Chewning had bought from said company.

Said J. W. Chewning, on the same day, executed and delivered his deed of trust, bearing even date with the notes, conveying said engine to G. W. Graves, trustee, to secure the payment of said notes, in which deed it was, among other things, expressly stipulated and provided that "in case default shall be made in the payment of any one of the above notes or part thereof," etc., etc., "then the said company shall have the right to declare all the above notes due, and then, or in either of said causes named, said trustee aforesaid shall take immediate possession of the property thereby conveyed," etc., etc., "and upon notice from the Geiser Manufacturing Company shall proceed to sell the same at public auction upon such terms, and at such time and place, and after such notice as shall to him seem proper and suitable, and after paying the costs and expenses of executing this trust and reasonable attorney fees, he shall apply the balance, if any, to the payment of the notes and interest hereinbefore mentioned," etc., etc.

On the 22nd day of March, 1898, the defendant, J. W. Chewning, filed his answer to the plaintiff, Geiser Manufacturing Company's bill to which answer the plaintiff replied genrally, in which answer, he, among other things alleges that "it is true as alleged in said bill that he purchased from plaintiff an engine at the price of $——, of which he paid thirty-two dollars and

fifty cents, and for the residue of said purchase money, he executed to G. W. Graves, trustee, a deed of trust on said engine, a copy of which deed is filed with complainant's bill. On an inspection of said paper it will be seen that if respondent made default in the payment of said balance of purchase money for the period named in said deed of trust, then the trustee was directed to make sale of said engine and fixtures on the terms set forth in said deed, but respondent alleges that after advertising the said property the said trustee sold the said engine and fixtures, and purchased the same himself at the price of one hundred and eighty-five dollars, and that he afterwards on the —— day of ————, 18—, sold the said engine and fixtures at the price of four hundred dollars, an advance on the price at which he himself undertook to purchase said property, of the sum of two hundred and fifteen dollars, and respondent submits that a trustee cannot sell property under a deed of trust and become the purchaser thereof himself; that the sale by said trustee to himself was illegal and void; and he further submits that the price at which Ballard purchased said property must enure to the benefit of respondent, and that instead of giving respondent credit for the sum of one hundred and eighty-five dollars he should have given him credit for the sum of four hundred dollars, the amount at which the said property was sold to said R. S. Ballard, and W. C. Harvey. And respondent avers that the said G. W. Graves, trustee as aforesaid, who was also the agent of the Geiser Manufacturing Company, took possession of said engine and run the same for his own benefit and profit for a period of one year before he sold the same to Ballard and Harvey, and respondent avers that by his so running and using said engine for said period the said engine was greatly worn and materially damaged at least to the amount of one hundred and fifty dollars; that if said engine had been sold by said trustee before it had been so worn and damaged by twelve months' constant use, it would have been sold for at least one hundred and fifty dollars more than it did sell for to said Ballard and Harvey—to-wit: it would have brought the sum of five hundred and fifty dollars at least, and respondent submits that on that account the claim of plaintiff against him should be credited with that amount. He therefore prays that the said amount may be credited on the claims of plaintiff

against him, and if so done he submits that he does not owe the plaintiff one cent." A credit of eighteen dollars and fifty cents, as of February 3, 1896, and a credit of one hundred and seventy-four dollars and fifty cents, (being one hundred and eighty-five dollars, proceeds of the sale of the engine, less ten dollars and fifty cents—expense of executing deed of trust,) as of August 14, 1897, are given by the commissioner in his report. There is no error in the calculation of said balance of six hundred and fifty-six dollars and eighty-one cents, after allowing said credits. The plaintiff, Geiser Manufacturing Company, makes no exception thereto. The depositions of W. C. Harvey, Jr., and J. W. Chewning, excepted to by plaintiff and excluded by the court, prove that G. W. Graves, trustee, became the purchaser of the engine at his sale thereof, made as trustee, about the middle of August, 1897, for one hundred and eighty-five dollars, and that in May, 1898, he sold said engine to said Harvey and R. S. Ballard for four hundred dollars. We see no reason why the circuit court sustained the exceptions to, and excluded the said depositions. They were proper evidence to prove the said credit of one hundred and seventy-four dollars and fifty cents, net proceeds of the sale of the engine, and the date on which said credit therefor should be given on the notes.

In *McCandlish, admr. etc.,* v. *Edloe et als.,* 3 Grat. 330, 333, it is held: "Where a commissioner in his regular proceedings to adjust and settle accounts referred to him, takes the depositions of witnesses to enable him to act upon the subject, his general notice of such proceedings is sufficient, without a special notice from him, or the adverse party that such depositions will be taken." The circuit court, therefore, erred in sustaining the exception to the said depositions, but the credit which they established, having been properly given by the commissioner, the error is not prejudicial to the appellant.

If the sale of the engine made by Graves, trustee, to himself, is void, as claimed by the appellant, no person is bound thereby. If it be voidable only, although the appellant be prejudiced, he cannot have it set aside in this collateral way, but must resort to a direct proceeding upon a proper case for the purpose.

It does not appear that the plaintiff, the Geiser Manufacturing Company, participated, in any manner, in either of said

sales or had notice thereof. The alleged misconduct of the trustee, if it be misconduct, cannot impair the rights of the plaintiff to collect its demand from the debtor. *Carter* v. *Neil.* 71 Am. Dec. 136; *Id.* 24 Ga. 346.

The appellee, Geiser Manufacturing Company, cannot be charged with the four hundred• dollars for which Graves sold the engine the second time. Therefore, the said exception of appellant to the commissioner's report relating to that matter was properly overruled by the court. The amended and supplemental answer tendered by J. W. Chewning, and on objection thereto, rejected by the court, is in substance, the same as his original answer, with the addition of the prayer that it be treated as a cross bill and that process be awarded thereon. It was properly rejected.

The said causes are not brought or prosecuted under section 2 of chapter 74 of the Code, but are instituted under section 2 of chapter 133, to avoid the said deed of trust, executed by J. W. Chewning to L. B. Dunn, trustee.

Plaintiff, Baldwin Ballard, recovered his judgment against defendant, J. W. Chewning, on the 21st day of June, 1897, nearly a month after said deed of trust had been executed by Dunn, trustee, and at the rules, held on the first Monday of July, 1897, filed his bill against said J. W. Chewning and others attacking said deed of trust. The summons commencing his said suit was issued, and bears date, on the 7th day of July, 1897. The Geiser Manufacturing Company, without obtaining judgment on its demand, filed its bill against the same parties for the same purpose at rules on the first Monday in August, following; but the summons commencing the suit was issued, and bears date, on the 15th day of June, 1897.

The court, by its decree appealed from, in effect held that the said judgment in favor of Baldwin Ballard, and the said demand of six hundred and fifty-six dollars and eighty-one cents in favor of the Geiser Manufacturing Company, reported by the commissioner, were and are of equal dignity and priority, and shall be paid *pro rata* out of the proceeds of the sale of said lands.

This is error. In *Foley* v. *Ruley, et al.,* 50 W. Va. 158, this Court says, citing *Wallace* v. *Treakle,* 27 Grat. 479: "It is plain by the very terms of this statute the creditors, assailing

successfully a fraudulent conveyance, is placed in the same position, and is entitled to the *same relief,* as if he had already obtained a judgment or decree against his debtor. What is that position, and what is that relief? Plainly a lien upon the property of the debtor, just as if he had, at the filing of his bill, already obtained a judgment or decree. The statute places the creditor, who assails a fraudulent conveyance, if he succeeds in vacating it, in the position 'of one already having obtained a judgment or decree, and his lien subsists from the time of filing his bill." In that case one judgment has been acquired before the date of the fraudulent conveyance. Other judgments had been recovered after the date of the deed and before the bill was filed and there were creditors at large. The Court held that in distributing the fund it was to be applied, *First,* to pay the judgment recovered before the deed was made. *Second,* to the judgments recovered before the bill was filed. *Third,* to the creditors at large who joined in the bill. *Fourth,* to the creditors by petition before the death of Henderson in the order in which their petitions were filed. *Fifth,* to all the other creditors *pro rata.* No West Virginia case has been found in which this question has been discussed, but the argument of Judge Christian is a strong one. The statute gives the creditor such relief in respect to the estate as he would be entitled to after obtaining a judgment or decree for the claim which he might be entitled to recover. The language of the statute puts the attacking creditor upon the grounds occupied by the judgment creditor, and by construction the court of appeals of Virginia and this Court have determined that it gives the attacking creditor a lien, because it gives him the same relief which he would be entitled to after obtaining a judgment for the claim. Therefore, in so construing that statute the courts hold that a judgment is a lien upon real estate fraudulently conveyed by the debtor before the date of the judgment. Obtaining judgment against the debtor gives a lien. Filing a bill under section 2 of chapter 133 to set aside the fraudulent conveyance gives the attacking creditor a lien. That is the starting point of all these decisions. If judgment is recovered before such a bill is filed the judgment creditor has priority; if, after the bill is filed, the attacking creditor has priority. In reaching this conclusion, the equitable principle, that the diligent are to

be favored, is not overlooked. A judgment creditor, without filing a bill to set aside the fraudulent conveyance or to enforce the lien of his judgment and incidentally set aside the fraudulent conveyance, could never satisfy his judgment out of the property. By his failure to institute such proceedings the grantee in the fraudulent conveyance would keep the property and the judgment creditor would never be paid. To obtain relief it is just as necessary that he come into a court of equity, as it is that the creditor at large file his bill under said section 2. He who files his bill first shows the greater diligence in respect to that matter. But the judgment creditor having asserted his claim in a court of law, before the creditor at large took any step whatever, it may be doubted whether the latter has been the more diligent or has been first to assert his claim. However that may be, the construction put upon the statute in question in *Wallace* v. *Treakle,* which has been undoubtedly followed in this State, although the question has never come up for adjudication in this Court, is so logical and reasonable and so well considered that it ought not to be disturbed. It is a case out of which this whole doctrine of preferences acquired under said statute arises. It goes no further than is here stated. This Court has never extended or enlarged it, nor in any way altered the rule as there laid down. To change it now would be to tear up the very foundation of the whole doctrine. See *Clark* v. *Figgins,* 31 W. Va. 156."

Lest the term, "from the time of filing his bill," used in the case above cited, be misunderstood and misapplied, we deem it proper to apply to this language the force and effect which must be given to it.

The Code, section 5 of chapter 124, says: "The process to commence a suit, shall be a writ commanding the officer to whom it is directed, to summon the defendant to answer the bill or action." In *U. S. Blowpipe Co.* v. *Spencer, et al.,* 46 W. Va. 590, BRANNON, JUDGE, speaking for the Court, says: "And I must assert that upon a review of the authorities, the issuance of the writ, generally speaking, is the beginning of the suit, if no statute controls." *Jackson* v. *Hull,* 21 W. Va. 601. There should be no difference, under our statute, between law and chancery as to this. In *Lambert* v. *Ensign Manf'g Co.,* 42 W. Va. 813, the Court says: "The suing out of the writ of summons

in an action at law is, in this State, the commencement of the action, but the date of the writ is not conclusive, but is *prima facie* evidence of the date of the commencement of the action. In *Ross* v. *Luther,* 15 Am. Dec. 341, *note,* it is held, that, "Where the issuance of the writ is regarded as the commencement of the action, its date will be deemed *prima facie* evidence of the time of its issuance."

In *Harmon* v. *Byram's adm'r.,* 11 W. Va. 511, 521, the question was, whether Patton was a purchaser *pendente lite.* The Court says: "The subpœna was issued on the 3d day of January, 1872, and was served on the defendant Byram on the 6th of the same month. On the 20th day of January of the same year, the purchase was made; and the bill was filed at February rules following. A subpœna served is not a sufficient *lis pendens,* unless a bill be filed; but when a bill is filed, the *lis pendens* begins from or relates back to the service of the subpœna." 3 Sug. 459; *Newman* v. *Chapman,* 2 Rand. 93. In *O'Connor* v. *O'Connor,* 45 W. Va. 354, 361, ENGLISH, JUDGE, for the Court, uses this language: "The purchase was made on September 1, 1893, the suit was instituted on the 15th day of August, 1893, and the process had been served before this purchase was made, and before the bill was filed. The process having been served on the defendant Womelsdorff on the 18th day of August, and on John P. O'Connor on the 23d of August, and the bill filed at October rules, the *lis pendens* related to the service of the writ. From that time the suit was pending."

JUDGE BRANNON, in discussing this question in *Blowpipe Co.* v. *Spencer, supra,* says: "The point is made that this suit was barred, because not brought within six months, on the theory that service was not within that time. I doubt the correctness of *Stone* v. *Tyree,* 30 W. Va. 687, in its holding that *lis pendens* dates from the service of the subpœna only. In an action at law, the suit dates from the writ issued. *Newman* v. *Chapman,* 2 Rand. 93. Authorities there shown date it in the chancery suit from service. This rule is based upon the English Chancery practice, from the fact that never till bill filed did writ issue, and the mere filing of a bill before writ was no suit; but now our Code (chapter 124, section 5) says that 'process to commence a suit shall be a writ;' applying to both chancery, and action at law. A suit exists at its date." JUDGE ENGLISH,

who filed a dissenting opinion in the case above cited, among other things, says: "Was this suit commenced within six months after the plaintiff filed its account in the clerk's office? Now, while there is some diversity of opinion upon this question, the weight of authority appears to be that the suit or action is commenced when the writ issues," thus agreeing with the other members of the Court as to this particular question, notwithstanding any previous opinion which may have been entertained by him. *Lawrence* v. *Winifrede Coal Co.,* 48 W. Va. 139.

From the English chancery practice of filing the bill, before issuing the writ, originated the idea that the filing of the bill is the commencement of the suit, and upon this theory, the terms, "commencement of the suit" and "the filing of the bill," have been used as correlative and equivalent in meaning.

It must be observed that our statute places a suit in equity and an action at law upon the same basis, as to the issuance of the writ commencing the same.

It seems that the great weight of authority fixes the issuance of the writ, as the commencement of the suit or action; that the date of the writ is *prima facie* evidence of the time of its issuance; and that when the bill or declaration is filed, it relates back to the issuance of the writ.

In this class of cases, it is generally considered a race of diligence by the creditors of the fraudulent debtor. Legal remedies are for the active and diligent. *Lex vigilantibus favet.* The creditor discovering the fraudulent conveyance of his debtor, immediately commences his suit, by causing summons to be issued commanding the debtor to answer the bill *to be exhibited* against him. It is the duty of the sheriff or other officer of the court, wherein the suit or action is instituted, to serve the process commencing the same; and the process may be executed on or before the return day thereof. The creditor thus diligent should not be postponed for some other creditor, who may have first secured service of his writ, as it may be, through favoritism of the officer to the one, or negligence toward the other. It will not do to say, in answer, that the first creditor might have had service made by an individual. He may, but is not required, to do so. He is entitled to the service of the public officer, chosen by the people for the purpose. The right

of a party to priority should not be made to depend on the date of the service of his writ.

We, therefore, hold that the commencement of the suit or action is the issuance of the writ, except in the action before a justice, for which the statute provides otherwise; and that when the bill is filed it relates back to the time of the issuance of the writ.

Applying the foregoing principles to this case, the said Geiser Manufacturing Company has priority over Baldwin Ballard. The judgment against said J. W. Chewning in favor of said Crews, reported for the use and benefit of said J. L. Rowan and J. D. Logan, having been recovered on the 4th day of January, 1898, after the commencement of both of said suits, is not entitled to equal dignity and priority, and to be paid *pro rata* with the said debt due the Geiser Manufacturing Company, or the judgment in favor of Ballard. The court, therefore, erred in holding that fifty dollars and eighty-seven cents, part thereof, should be paid *pro rata* with the debts decreed in favor of said plaintiffs. The decree further provides that thirty dollars and sixty-five cents with interest from the date thereof, shall be first paid out of the proceeds of the sale of the one hundred and fifteen poles of land, to J. D. Logan. The reason for this preference is not given. It is presumed to be correct.

The decree of the circuit court is, therefore, hereby modified in so far as it holds that the demands of said Baldwin Ballard, the Geiser Manufacturing Company, and part of the said judgment in favor of Crews are of equal dignity and priority, and entitled to payment *pro rata* as aforesaid. The decree of the circuit court is hereby modified to the extent, that the debt, interest and costs decreed to the Geiser Manufacturing Company, be and the same is first in priority, and shall be first paid out of the proceeds of sale of the land in the deed of trust described; except the proceeds of said one hundred and fifteen poles thereof; that the said debt decreed to Baldwin Ballard is second in priority, and is entitled to be next paid out of said proceeds, except as aforesaid; that, after the payment of said thirty dollars and sixty-five cents with its proper interest, out of the proceeds of the sale of said one hundred and fifteen poles of land, the balance thereof, if any, shall be applied to the payment of said Geiser Manufacturing Company and Ballard in their pri-

ority as herein stated, if that be necessary; and leave is reserved to said J. L. Rowan and J. D. Logan to take any proper proceedings to have the surplus of said proceeds, if any, after payments as aforesaid, applied to the discharge of the judgment in favor of Crews, of which they are the beneficiaries.

The decree of the circuit court aforesaid, so modified, is affirmed with costs to the Geiser Manufacturing Company against the appellant; and said causes are remanded to the said circuit court for such other proceedings as may be proper for the execution of said decree of sale.

*Modified and Affirmed.*