# CHARLESTON

## DENT *v*. PICKENS, *et al.*

Submitted February 27, 1906.    Decided March 13, 1906.

1. APPEAL---*Decision.*

In determining whether a matter is *res judicata* by a decision of an appellate court, when the order entered reverses a decree of the trial court, and remands the cause for further proceedings, according to directions given in the written opinion, filed at the time of the rendition of the decision, the opinion and record, as well as the order, are to be considered; and, if it appears, from the record, that the parties between whom it is claimed there was an adjudication, were before the court, and the subject matter of the alleged adjudication brought into the suit, by pleadings relating thereto. and, from the opinion and order, that the matter was expressly decided, the parties are concluded by the decision in all further proceedings in the cause in the court below, as well as in all collateral proceedings, although the pleadings in the cause, viewed from the standpoint of a demurrant thereto, were insufficient.   (p. 281.)

2. SAME---*Extent of Decision.*

Not only all matters that were actually litigated, but also all others that the parties were bound, by the state of the pleadings, to assert, by way of defense to, or in support of, the demand or demands set up in a cause, are *res judicata* by the decision rendered therein.   (p. 285.)

3. JUDGMENT---*Res Judicata---Parties---Lis Pendens.*

Except in pure proceedings *in rem* nothing is *res judicata* by a decision as to persons who are not parties to the cause in which it was rendered; but the status of the property involved therein may have been so affected, by the pendency of the suit, as to have rendered it insusceptible of valid purchase or acquisition by strangers thereto, while the cause was pending or after decision; as against one who was a party to it.   (p. 286.)

4. *Lis Pendens---Extent of Rule.*

The rule *lis pendens* extends to non-negotiable choses in action and funds, for the subjection of which to the payment of a debt, a suit in equity has been instituted to set aside assignments thereof, as having been made in fraud of the plaintiff's rights.   (p. 284.)

5. FRAUDULENT CONVEYANCE---*Assignment of Fund---Answer.*

The answer of an assignee to a bill, attacking an assignment of a fund, as having been fraudulently made, must deny notice of fraudulent intent of the assignor, as well as fraudulent intent on the part of the assignee.   Failure to deny it is equivalent, in legal effect, to an admission of the truth of the allegation of notice.   (p. 289.)

6. SAME--- *General Denial---Effect.*

The answer of an assignee, responding to a bill charging fraud in the assignment, specifically denies the fraudulent intent imputed to him by the allegations of the bill, says nothing as to the fraudulent intent imputed to his assignor, is silent as to the allegation of notice of the fraud of the latter, and denies generally each and every charge or intimation of fraud charged against respondent in plaintiff's original and amended bills; and there is no exception to said answer. *Held*, the general denial is insufficient to negative fraudulent intent of the assignor and notice thereof to the assignee. (p. 289.)

7. SAME---*Bona Fide Purchaser.*

One who claims title to property or a fund as a *bona fide* purchaser without notice must allege, not only that he is a purchaser for value, but also that he had no notice of the fraudulent intent of his vendor or his assignor. It requires both payment of adequate consideration and want of notice of fraud to make out a title in such case. (p. 290.)

Appeal from Circuit Court, Barbour County.

Suit by Susan C. Dent against Dever Pickens and others. Decree for plaintiff, and defendants A. G. Dayton and others appeal.

*Affirmed in part. Reversed in part.*

FRED O. BLUE and DAVIS & DAVIS, for appellants.

J. HOP WOODS, for appellee.

POFFENBARGER, JUDGE :

On the 12th day of May, 1905, in the chancery cause of Susan C. Dent v. Dever Pickens and others, pending in the circuit court of Barbour county, an order allowing an appeal in the following terms was entered by this Court: ''An appeal and *supersedeas* upon the foregoing petition is allowed as to so much of the decree pronounced on the 23rd day of February, 1905, as requires that A. G. Dayton and Mollie Pickens pay to the plaintiff the sum of $1,000.00, with interest thereon from the 12th day of May, 1892, and the sum of $69.24, with interest thereon from the 6th day of June, 1892, and that said A. G. Dayton and John J. Davis pay to the plaintiff the sum of $125.00, with interest thereon from the 21st day of May, 1892, and that said A. G. Dayton and John Bassel pay to the plaintiff the sum of $150.00, with interest thereon from the 26th day of May, 1892.''

The decree contains a number of other adjudications in favor of the plaintiff, some of which, not covered by the

order allowing the appeal, are made the subjects of assign-ments of error in the briefs of counsel. They say that, as the case is before this Court on an appeal, they may, under the rules, assign any error in the decree. We do not under-stand this to be in accord with the practice of this Court or its rules, as properly construed. When the appeal is from the whole decree, errors in it, not assigned in the petition for the appeal, may be assigned in the briefs, and may even be noticed by the Court and acted upon without any assignment thereof. But when the appeal allowed does not extend to the whole decree, the Court has before it, and within its juris-diction, only those matters as to which the appeal was allow-ed. All adjudications as to which no appeal was allowed remain in the court below, within its jurisdiction, and consti-tute proper subjects for its further action. A proposition so obviously deducible from the terms of the order requires no citation of authority for its support; but, as the contrary thereof seems to be relied upon with confidence, reference is here made to 3 Cyc. 220, where a number of decisions in which the rule has been enforced are cited. The only excep-tion, is a case in which the matter, as to which the appeal was allowed, is so connected with all others as to render it impossible to act upon it without affecting them. At this time, therefore, none of the matters adjudicated in the decree of February 23, 1905, except the two items of $1,000.00 and $69.24, decreed against A. G. Dayton and Mollie Pickens, the $125.00 item, decreed against A. G. Dayton and John J. Davis, and the $150.00 item, decreed against A. G. Dayton and John Bassel, are within the jurisdiction of this Court, nor can they be considered on this appeal.

As to these items, appellee relies upon the principle of *res judicata*, claiming that this Court, by its decision and direc-tions to the court below, on the first appeal in this cause, the disposition of which is reported in 46 W. Va., at page 378, adjudicated and settled the controversy in reference thereto in her favor. If this be true, there is no error in the action of the court below in allowing them to her, for that decision, whether it be right or wrong, is unalterable. *Butler* v. *Thompson*, 52 W. Va. 311; *Koontz* v. *Doolittle*, 48 W. Va. 592; *Camden* v. *Werninger*, 7 W. Va. 528; *Henry* v. *Davis*, 13 W. Va. 230; *Campbell* v. *Campbell*, 22 Grat. 649; *Bank*

v. *Craig*, 6 Leigh 399; *Sibbald* v. *United States*, 12 Pet. 448; *Mackall* v. *Richard*, 116 U. S. 45; *The Santa Maria*, 10 Wheat. 431; *Himely* v. *Rose*, 5 Cranch 313. The first important inquiry, therefore, is whether this Court decided anything respecting said items, and if so, what.

Before entering upon this inquiry, it is proper, and necessary to a clear analysis of the decision rendered by this Court, to mark a distinction as to parties. A. G. Dayton, John Bassel and John J. Davis were not parties to this cause at the time of said decision. Bassel was not a party at all in any capacity. Dayton and Davis were parties as trustees and Dayton as special commissioner. Mollie Pickens and Dever Pickens were parties, and the litigation, as to one of the matters now under consideration, the Coburn debt, less the part assigned to Mollie Pickens, was between Susan C. Dent on the one side and Dever Pickens and Minnie B. Coburn on the other side, and, as to said assigned part, between Susan C. Dent and Mollie Pickens, Dayton and Davis being rather nominal parties in their representative capacities. Hence, whatever decision was rendered affected personally Dever Pickens, Minnie B. Coburn and Mollie Pickens, and the status of the funds about which they were litigating. No personal decree could have been rendered against Dayton, Davis and Bassel, but the status of the fund may have been so affected as to have rendered the subsequent decree against them proper on the third amended bill afterwards filed against them along with the original parties.

Susan C. Dent, in the year 1889, instituted an action at law against Dever Pickens, laying her damage in the declaration at $25,000.00. Pending the same, and before judgment, the defendant executed a deed of trust, conveying to A. G. Dayton and John J. Davis, trustees, certain real estate to secure the payment of alleged indebtedness, amounting, in the aggregate, to $11,000.00. Her original bill in this cause, filed in February, 1889, set up the pendency of said action and attacked the said deed of trust as fraudulent and prayed that it be set aside as to her demand. In September, 1889, she filed an amended bill, showing the recovery of a judgment by her in said action for the sum of $10,000.00 and the issuance of

execution thereon and docketing of the same in the clerk's office of the county court of said county, whereby she claimed to have acquired a lien upon all the personal property and estate of said defendant. In this amended bill, she further charged that, on the 10th day of May, 1889, the defendant, for the purpose of hindering, delaying and defrauding her out of the collection of her said debt, had entered into a marriage contract with Minnie B. Coburn and fraudulently settled upon her, by assignment, a large amount of personal property in the form of debts due him from sundry persons, and conveyed to her his interest in a certain tract of land, containing 396¾ acres. Among the debts so assigned there was one which is described in said contract as follows: "The rest and residue of the debt due said Dever Pickens from M. W. and Ledrue Coburn, and secured by deed of trust to Alston G. Dayton and James Pickens, trustees, dated December 21st, 1885, after deducting therefrom $1,000.00, assigned Jan'y 14th, 1880, to Mollie Pickens." The marriage contract, containing this assignment and recital, was exhibited with said amended bill. The following allegations of the amended bill relate, in part, to said Coburn debt and the assignment of a portion thereof to Mollie Pickens: "Plaintiff further says that on the 31st day of August, 1889, she caused an execution to be issued upon said judgment, and on the 31st of August, 1889, had the same placed in the hands of the sheriff of said county to be executed, and on the 31st day of August, 1889, had the same docketed in the clerk's office of the county court of said county, and thereby acquired and continued the lien of said execution upon the debts transferred by said defendant Pickens to said Minnie B. Coburn, whereof the said M. W. Coburn, Ledrue Coburn, A. G. Dayton, surviving trustees of himself and said James Pickens, deceased, in the deed of trust dated December 21st, 1885, mentioned in said contract, Mollie Pickens, A. S. Pickens, M. S. Clevenger, A. H. Young, Emma Walker and John D. Pickens, in his own right, have due notice and had also knowledge of the fraudulent purpose of said defendant Pickens in making said contract."

"Plaintiff further avers that since she filed her said original bill the said Dever Pickens has abandoned this state and is living in one of the far western states, as does also the

said Minnie B. Coburn, who is the daughter of said M. W. Coburn and the niece of said Ledrue Coburn, both of whom are insolvent; that the said Dayton and Davis are and were the counsel of said Dever Pickens from the day of the institution of plaintiff's action at law against him in which said judgment was recovered up to this day; that said Mollie Pickens, Emma Pickens and John D. Pickens are the sisters and brothers of said Dever Pickens; that said A. S. Pickens is his nephew; that said A. H. Young is the husband of his sister, and that said M. S. Clevenger is either some relative or intimate friend of said Dever Pickens; and that all of them well knew the financial standing and habits of said Pickens and of his purpose to cheat the plaintiff in all of said transfers." Said first amended bill further alleged that Dever Pickens, "for the purpose of hindering, delaying and defrauding the plaintiff out of the collection of her said debt, entered into a marriage contract or ante-nuptial settlement with the defendant, Minnie B. Coburn, a person without financial means or worldly position, justifying the generosity of said Pickens, whereby, in consideration of the promise of said Coburn to marry said Pickens, he transferred and set over to her certain debts due to him," amounting in the aggregate to more than $3,500.00; and that the said contract was void in law and fraudulent in fact and that the said Minnie B. Coburn was privy to, and had perfect knowledge of, the fraudulent purpose of said Pickens in executing the same.

A second amended bill was filed in 1893, which contains the following allegations respecting said sum of $1,000.00 and the Coburn debt: "Plaintiff further says that the said Dever Pickens is insolvent; that the deed of trust executed by him to the defendants, Davis and Dayton, trustees, on the 14th day of January, 1889, and the said contract, are fraudulent for the reason set up in her former original and amended bills; that the defendants, Mollie Pickens, A. S. Pickens, M.S. Clevenger, A. H. Young, Emma Walker and John D. Pickens, both as executor and in his own right, had due notice thereof; that the debts due from them and from the defendants, M. W. Coburn and Ledrue Coburn, to said Dever Pickens mentioned in said trust and contract remain unpaid and are bound by the lien of said execution; that the $1,000.00

mentioned in said contract as part of the debt due to said Dever Pickens, secured by the trust of said M. W. and Ledrue Coburn to said A. G. Dayton and one James Pickens, (who is now deceased), trustees, dated December 21st, 1885, was fictitious and fraudulent, of which said Mollie Pickens had due notice, as did also the said Dever Pickens and said surviving trustee, A. G. Dayton, and if not paid is bound by the lien of plaintiff's said execution, and if paid was paid in fraud of plaintiff's right in the premises, and said Mollie Pickens will be made to respond to the plaintiff for the amount thereof." The prayer of said second amended bill reads, in part, as follows: "To the end that the plaintiff may be relieved she prays that the said Mollie Pickens may be made to respond to the plaintiff as aforesaid, in case she has received the said sum of money; that the said contract may be declared void and fraudulent as to the plaintiff; 'that the said trust of January 14th, 1889, as to the debts secured therein to the estate of said James Pickens, Ann M. Pickens and R. M. Boring, may be declared fraudulent and void; that the lien of said execution may be enforced against the debts due to said Dever Pickens from the defendants, Mollie Pickens, A. S. Pickens, John D. Pickens, in his own right, M. S. Clevenger, A. H. Young, Emma Walker, M. W. Coburn and Ledrue Coburn, and that they may be restrained and enjoined from paying the same to anybody but the plaintiff; that the interest of Dever Pickens under said trust of January 14th, 1889, and said contract may be declared; that his interest in the real estate therein mentioned may be ascertained and subjected to the plaintiff's said judgment and exetion; that a lien may be declared in favor of the plaintiff therefor in case the same may be held fraudulent as of the date of the institution of this suit, to-wit, January 24th, 1889." The decree, brought up by the first appeal was made and entered on the 17th day of February, 1896, more than three years after the filing of said second amended bill. It was predicated not only upon the pleadings but upon evidence taken and was, therefore, a final adjudication upon the merits of the controversy. It dismissed all of said bills. This Court, on the appeal, reversed that decree and remanded the cause with specific directions, the mandate requiring the circuit court to further proceed in the cause, "according to

the principles stated and directions given in the written opin-
ion aforesaid, and further according to the rules and princi-
ples governing courts of equity."

By reference to the opinion of this Court, at page 392, it
will be seen that the attention of the Court went directly to
the said Coburn debt of $2,050.89. Then followed this
language: "And it is claimed by the appellant that the debt
of two thousand fifty dollars and eighty-nine cents mentioned
in said agreement is, by virtue of the lien of the plaintiff's
bill, and the docketed execution therein mentioned, liable
to her judgment, and the same should be charged against
the person paying the same, or receiving payment thereof,
with notice of plaintiff's rights, and against the funds in the
hands of said general receiver, to-wit, the sum of eight
hundred and eighty-six dollars and eighty-four cents, with
interest, as stated in said agreement. This proposition is
correct, as applying to the debtors mentioned in said assign-
ment from the date of the filing of said first amended bill.
Defendant Mollie Pickens failed to answer, and the amended
bills were taken for confessed as to her." On page 393, the
opinion directs the circuit court "to refer the cause to a com-
mission to ascertain and report what moneys due on the claims
assigned by Dever Pickens from the parties mentioned in
the amended bills as debtors to him, if any, have been paid
since the filing of the first amended bill, by whom and to
whom paid, and whether the one thousand dollars of the
debt secured by the trust deed made by M. W. Coburn and
Ledrue Coburn of October 21, 1885, secured to Dever Pick-
ens, and mentioned in the said marriage contract as having
been assigned to Mollie Pickens, has been paid to her since
the filing of the first amended bill, and whether any or all of
such moneys have been paid or not; that the court take pro-
ceedings to collect all such money as may not be shown, upon
proper and sufficient evidence, to have been paid prior to the
filing of the said first amended bill, to be collected from the per-
sons who have since received it, or from the debtors who may
not have paid what they owe; and that the same, as fast as
collected, be applied to the judgment or appellant, until the
same is satisfied."

The argument against the claim that this matter is *res
judicata* is that this Court, at that time, having dealt only

with the first amended bill, which asserted an execution lien
upon said debt, cannot be regarded as having based its action
on the allegations of the second amended bill, and, as the
judgment on which the execution had issued was reversed,
the execution lien failed, in consequence whereof the reason
or basis of the decision has failed.   Further argument in
this connection is based on insufficiency of the allegations of
the second amended bill and indefiniteness of some expres-
sions in the opinion of the court.   It is to be observed, how-
ever: that, in the opinion, it is said the defendant Mollie.
Pickens failed to answer and the *amended bills* were taken
for confessed as to her.   In another place the opinion says.
the court below shall, through its commissioner, ascertain
and report what moneys due on the claims assigned by Dever
Pickens from the parties mentioned, not in the first.
amended bill, but in the *amended bills* as debtors to him,
if any, have been paid since the filing · of the first amended
bill; and the final direction is that the court take proceed-
ings to collect all such money as may not be shown, upon
proper and sufficient evidence, to have been paid prior to
the filing of the said first amended bill, to be collected from
the persons who have since received it, or from the debtors
who may not have paid what they owe, and that the same, as.
fast as collected, be applied to the judgment of the appel-
lant, until the same is satisfied; and in immediate connection
with this direction the $1,000.00 claim of Mollie Pickens is.
mentioned.   The first amended bill was filed in September,
1889.   The money in question was paid by Melville Peck,
special commissioner, to Alston G. Dayton, attorney, on the
27th day of April, 1892, a long time after the filing of said
first amended bill.   All this was before the Court and spe-
cially mentioned in the opinion, and the positive, emphatic
direction is, to cause to be collected and paid to the appel-
lant in that appeal, the appellee in this one, all money which
had not been paid prior to the filing of said first amended
bill.   The adjudication by this Court, notwithstanding any
reasons assigned in the opinion, must be regarded as founded
upon the record of the cause as it was when brought to this.
Court.   The reference to the first amended bill seems to
have been for the purpose of ascertaining the date on which
the appellee first acquired a lien upon, or right to charge,

the personal property of the defendant. As the Court deemed this to have occurred upon the filing of said first amended bill, that was the date most frequently referred to in the opinion, but it does not follow that the adjudication stands only upon the first amended bill. On the contrary, there are references to the second amended bill, for the opinion mentions the "amended bills" more than once.

The allegation of fraud and notice thereof in the second amended bill might have been held insufficient on a demurrer thereto, had one been interposed, but it does not appear that anybody demurred to it, nor did Mollie Pickens answer it. Its insufficiency was not in any way questioned nor its allegations denied. Dever Pickens responded to it, denying the fraud alleged and notice thereof to said Mollie Pickens. Possibly his answer might have availed his sister, had it been brought to the attention of the court. But she was treated as being in default. The opinion says the amended bills were taken for confessed as to her. It is said in the brief that this Court, in the opinion rendered on the petition for rehearing, said "Her debt is not denied to have existed. Dever Pickens owed her the money." This is a misapprehension. The language attributed to the Court is quoted from the brief of counsel merely as argument. On the contrary, the opinion rendered on the petition for rehearing says the defendant Mollie Pickens was permitted, notwithstanding her helpless condition, to be allowed to remain in default by the other members of the family, as well as their counsel, and was thereby placed in such condition as to be in great danger of losing a large portion of her estate; and it seems that they, in their eagerness to save themselves, overlooked the interests of their unfortunate sister. What can be the meaning of all this language in the opinion, if the Court did not predicate its decision, in part, upon the second amended bill, alleging fraud?

As to all of the M. W. and Ledrue Coburn debt, except the $1,000.00 thereof claimed by Mollie Pickens, the litigation was between Susan C. Dent and Minnie B. Coburn. The first amended bill charged unequivocally that the assignment of said debt, less said sum of $1,000.00, was void in law and

fraudulent in fact, and that Minnie B. Coburn had notice of the fraud on the part of Dever Pickens and participated therein. The object of the bill was to charge that fund and subject the same to the payment of Susan C. Dent's judgment. Under well settled principles, such a bill, if sustained, gives a lien on the fund from the time of suing out process thereon. This bill set up the execution lien, but the object of that allegation was to charge the same fund by the assertion of a lien thereon, on an additional ground, namely, the execution. Plaintiff attempted by her first amended bill to subject that part of the Coburn debt which was claimed by Minnie B. Coburn, not on one ground, but on two grounds, fraud and the execution lien. Assuming that the execution lien did fail by reversal of the judgment, its failure in no wise affected the other ground. Minnie B. Coburn answered the bill and contested its allegations of fraud, there was a full hearing upon the issues thus made and this Court most unequivocally decided that, as against Minnie B. Coburn, said debt was liable to the plaintiff's claim.

As to the $1,000.00, part of the Coburn debt, claimed by Mollie Pickens, the litigation was between her and Susan C. Dent and proceeded upon the second amended bill, the allegations of which she did not deny, and the sufficiency of which she did not question, and this Court expressly decided that said sum was liable to the plaintiff's claim.

Whether the reversal of the judgment on which the execution had issued should have produced a different conclusion, is another question the adjudication has foreclosed. The second amended bill brought it to the attention of the court, as well as the recovery, in the second trial, of another judgment for $9,000.00, and the issuance of a new execution thereon. The inquiry now is not whether a correct decision was rendered, but simply what was decided. The record shows there was jurisdiction of the persons of the parties and also of the subject matter of the decision, and the grounds of all the contentions now set up, to show that the invalidity of the assignments of the Coburn debt was not decided, were disclosed to this Court by the record at the time the decision was rendered. Being then regarded as insufficient to prevent a decree in favor of the appellee, they can confer no authority

upon this, or any other court, to disregard the plain emphatic terms of the mandate in determining what was decided.

It is said the action of this Court on the second appeal, reported in 50 W. Va. 382, in reversing the decree of February 23, 1900, and in refusing to treat the decision rendered on the first appeal as an adjudication against a bequest of $2,000.00 to the executors of James Pickens, deceased, expressly charged by the will upon certain real estate, although omitted from the directions given in the opinion as to the liens on the property, would justify us now in disregarding so much of that opinion as purports to adjudicate the rights of the parties respecting the Coburn debt. A very plain distinction between the two subjects is perceived. The opinion made no reference to said $2,000.00 bequest or charge. It was not a subject of controversy in the cause. It was not attacked by any allegation of any bill filed. Here, the matter which is said not to have been adjudicated was brought to the attention of the court by the pleadings, was one of the subjects of controversy and was expressly considered and dealt with in the opinion as well as in the positive directions to the court below, embodied in the opinion, which the order of this Court commanded the court below to treat, and enforce, as a part of the mandate.

The reasons for the conclusion, that said $2,000.00 lien was not affected by the former decision, were stated in the opinion, in part, as follows: "The plaintiff filed a bill, first amended bill and second amended bill, and in none of these bills is there any allegation or charge that said two thousand dollars has been released or paid in any way. The contention, therefore, that the matter of this two thousand dollar claim is *res adjudicata* is not tenable. No issue was ever made upon it and it is not enough that it might have been set up in the same suit. Nothing charged in the bill made it necessary for the executors to assert said claim by way of defense to the bill. It, therefore, does not belong to that class of things which are deemed to be *res adjudicata* because they might have been adjudicated. * * * Matters are not adjudicated which have never been pleaded, or which the party asserting them was not bound to plead in the former suit by way of defense or in support of his claim as plaintiff."

The state of the record as to the matter now under consideration renders it impossible to apply this doctrine.

That the course pursued in arriving at the conclusion, above expressed, is authorized by our decisions, and harmonizes with principles declared by courts generally, admits no doubt. *Biern* v. *Ray*, 49 W. Va. 129, propounds the doctrine that a man is concluded by an adjudication, when the state of the pleadings, as to the matter in question was such as to call upon him to respond thereto, and as to those things which were actually litigated and decided. In that case, the plaintiffs escaped the rule, because their bill in the former case had made no reference to the property, they charged by their bill in the second suit. It was not in the former case, nor were they bound, by any principle of law or rule of procedure, to put it in ; but, if they had been, the adjudication would have bound them, whether it was, in fact, in or not. *St. Lawrence Co.* v. *Holt and Mathews*, 51 W. Va. 352, illustrates the application of the rule to a different kind of a case. There, the bill alleged matter against Holt and Mathews, upon which relief against them was prayed. They failed to answer it, presumably because they deemed its allegations insufficient to afford a basis for a decree. Both the order made by this Court and the opinion pursuant to which the order was made, were more or less ambiguous. Nevertheless, the decree, dismissing the bill and thereby permitting a sale of the property, claimed by Holt and Mathews, to satisfy a deed of trust thereon, was deemed by this Court to have amounted to an adjudication of the question of title against Holt and Mathews. Insufficiency of the bill, as viewed from the stand-point of a demurrant thereto, and indefiniteness and ambiguity in the opinion and decree, availed nothing against the only deduction that could logically be made as to the court's action, and this, too, notwithstanding deprivation of the right of trial by jury of the issue of title, which would have been raised by full defense. As sustaining the conclusion, arrived at under general principles discussed in the opinion, an authority of no less dignity than a decision of the Supreme Court of the United States, is cited and relied upon, near the close of the opinion, namely, *Heffner* v. *Insurance Co.*, 123 U. S. 747. It is useless to repeat the reasons upon which these decisions are predicated, or discuss gener-

ally the principles of the doctrine under which this case falls. They are in no sense questioned, the only contention being that the case is not within them. Mere defective pleading is no objection. *Thompson* v. *Wooster*, 114 U. S. 104; *Heffner* v. *Ins. Co.*, 123 U. S. 747; *St. Lawrence Co.* v. *Holt and Mathews*, 51 W. Va. 352. When the decree is ambiguous, or makes the opinion a part thereof, the court looks to both as well as the pleadings in the cause to determine what has been decided. *St. Lawrence Co.* v. *Holt and Mathews*, cited; *Butler* v. *Thompson*, 52 W. Va. 311; Herman Estop. & Res. Ad. p. 470, section 402.

Though there was an adjudication as above stated, there was no personal decree or adjudication against Dayton, Davis or Bassel. There could have been none since they were not parties. But it was decided that Susan C. Dent had, by reason of her first amended bill, a lien upon that part of the M.W.and Ledrue Coburn debt claimed by Minnie B.Coburn from the date of the filing of said bill. It was out of that fund that there had been paid to Davis said sum of $125.00, to Bassel said sum of $150.00, and to Mollie Pickens said sum of $69.24. He received this money after the filing of said bill and the assertion of a lien thereon pending the suit. It was a proceeding against that particular fund. That fund constituted the subject matter of the litigation, and was subject to a lien in favor of Susan C. Dent at the time this money was taken out of it as aforesaid. Dayton, Davis and Bassel were made parties in their individual capacities to said third amended bill on which the present decree against them is predicated. They were bound to take notice of the pendency of this suit against that fund and of the lien thereon acquired by the filing of said first amended bill. Choses in action, as well as tangible personal property and real estate are subject to the rule *lis pendens*, when the institution of the suit gives a lien on the fund, as a bill to set aside a fraudulent transfer does under the law of this State. This was asserted as the general law of the country by the case of *Haddon* v. *Spader*, 20 Johns. (N. Y.) 554, decided in 1822, in which all the English cases on the subject were carefully reviewed and analyzed.

Bennett on Lis Pendens, on pages 140 and 141, after reviewing all the authorities, gives the following clear ex-

pression of his conclusion: "The conclusion seems warranted that after the bill is filed and *lis pendens* commences, the specific property involved in the litigation becomes subject to the claim or demand of the complainant; and, that if the claim or demand should turn out to be of such a nature, that the property ought to be subjected to it under the rules prevailing in a court of equity, the power of unrestricted disposition in the defendant would be suspended or lost, and a purchaser from him *pendente lite*, would take the property subject to the lien which attached upon it by the institution of the suit; that in the case of personal property, it would be immaterial whether the judgment were a lien or not when the suit was commenced, for in such case it is the execution and not the judgment which would become a lien, and that if its collection had been obstructed so that the levy could not be made by reason of fraudulent conveyance of the defendant, to remove which the bill was filed, and the execution remained in full force and capable of enforcement against the property but for the obstacles created by the fraudulent conveyances, the court would have jurisdiction over the property; and, hence, it would be bound by *lis pendens*. The authorities go even farther than that; and it is well settled in this country, that if a creditor files a bill to set aside fraudulent conveyances, and to have the property applied, by the aid of a court of equity, to the payment of his judgment, although no lien has been or can be acquired at law, he acquires a specified lien or power over the property by filing the bill, and is entitled to priority over other creditors; and that any party purchasing the property sought to be subjected, to the claim is a purchaser *pendente lite*."

Whether the lien extends to personal property at all has been a matter of controversy among the several courts of the country, some affirming, and others denying, the proposition, and those of the former class have differed as to the subjects of the rule and the extent of its application; but there seems to be, among them, practical unanimity in the view that, in creditors bills, insolvency proceedings and suits to set aside fraudulent conveyances and transfers and charge the property with debts, it has full operation, because, in such cases, a lien, or the equivalent thereof, is acquired by the

commencement of the suit.   See 21 A. & E. Ency. Law 628, 629.   This Court, in *Bruff* v. *Thompson*, 31 W. Va. 16, has countenanced the view that it applies in any case in which a lien has been acquired in any of the modes recognized by law, and Judge GREEN thought it should have still broader application.   There is no occasion here to carry it further, and, not to apply it under such circumstances, would render it practically impossible to subject intangible property to the satisfaction of the debts of a fraudulent debtor.   Nor, in so doing, is there any encroachment upon the principles which seem to inhibit the application of the rule to specific money and negotiable paper.   Commencement of a suit to set aside a fraudulent conveyance, transfer or assignment, under our practice, creates a lien on the property so proceeded against.   *Wallace* v. *Treakle*, 27 Grat. 479; *Foley* v. *Ruley*, 50 W. Va. 158; *Clark* v. *Figgins*, 31 W. Va. 156; *Geiser &c. Co.* v. *Chewning*, 52 W. Va. 523.   The notice required by section 12 of chapter 139 of the Code was not filed, but that section applies to suits brought to charge real estate.   *Osborn* v. *Glasscock*, 39 W. Va. 749.

Escape from the operation of this principle was attempted by the assertion of a claim of assignment, by Dever Pickens and Minnie B. Pickens, (nee Coburn,) of $1,000.00 of said Coburn debt, to A. G. Dayton, to be held by him as security for the payment of counsel fees to himself, John J. Davis and John Bassel, for services rendered and to be rendered by them in said action at law.   The assignment is averred to have been made prior to the filing of said first amended bill, and a written instrument, evidencing the same, filed with a deposition, bears date, August 20th, 1889. The third amended bill charged retention and payment of this money by Dayton with fraudulent intent and full knowledge of the plaintiff's rights and of the fraudulent intent of the assignors, In his answer, he specifically denies any fraudulent intent, sets up the alleged assignment, and then denies generally, "each and every charge or intimation of fraud charged against him in plaintiff's original and amended bills either charged against him individually, or as trustee." He nowhere denies fraudulent intent on the part of Dever Pickens and Minnie B. Pickens, nor does he deny knowledge of their fraudulent intent in making said assignment. If, hav-

ing specifically responded to certain allegations thereof, he had denied generally all other allegations of the bill, his answer might have been sufficient, in the absence of an exception thereto, under the doctrine laid down in *Sandusky* v. *Faris*, 49 W. Va. 150, and *Burlew* v. *Quarrier*, 16 W. Va. 108, but the general denial stops short of notice and other material allegations, and is, therefore, purely argumentative and equivocal as to the matter of notice. Where fraud is alleged against a party who claims to be a *bona fide* purchaser without notice, or where he asserts a title as such, he must deny that he had any notice of the fraud of his grantor or assignor. " 'In all cases in which a party sets up his title to relief in equity as a *bona fide* purchaser, he must deny notice, though it be not charged. It is a general rule in pleading that whatever is essential to the right of the party and is necessarily within his knowledge, must be positively and precisely alleged, and the plaintiffs coming in the character of *bona fide* purchasers were bound to state affirmatively the equity of their case; if they will not aver the fact that they were purchasers without notice we are not bound to presume it. *Frost* v. *Beekman*, 1 Johns. Chy. Rep. 302; *Murray* v. *Ballou*, *Id.* 575. See also *Gallatin* v. *Erwin*, N. Y. 55-6.' " *Cochrane* v. *Hyre*, 49 W. Va. 315. Messrs. Dayton, Davis and Bassel no doubt rendered a large amount of efficient professional service to their clients, relying upon the understanding had with Pickens, as to security for their fees, and may have acted in the utmost good faith and without any knowledge of fraudulent intent on the part of their clients; but this is no excuse for failure to file a sufficient answer to the bill charging notice of the fraudulent intent of their clients. The plaintiff and the court, under such circumstances, were warranted in proceeding as if the undenied allegations were true. *Siers* v. *Wiseman*, 52 S. E. 460, 462; *Grant* v. *Cumberland &c. Co.*, 52 S. E. 36. That the assignment occurred before the bill attacking it was filed, is wholly immaterial. Fraudulent conveyances and assignments usually take place before institution of the suit. Equity will undo fraud as readily as it will prevent it.

If the averment of the assignment be regarded as new matter, set up as ground for affirmative relief, instead of treating the answer as a whole as having been intended to be a

mere response to the bill by way of denial of its allegations, the same rule would apply. In order to make out a good title on the face of the answer, and especially an equitable title, it would be necessary to affirm that the respondent was a purchaser for value *without notice*, the bill having alleged fraudulent intent on the part of the assignors; for proof of that fact against the assignors would necessitate want of notice thereof on the part of the assignees to make their title good. In alleging title, all the essential elements thereof must be set forth. The omission of any one of them is fatal. Averment of an assignment ante-dating the filing of the bill might logically tend to the conclusion that it was not fraudulent and that there was no knowledge of fraudulent intent; but it would not amount to an averment of want of notice. It is a mere evidential fact, not precluding either fraud or notice thereof.

From the principles and conclusions above stated, it results that A. G. Dayton was liable to the plaintiff for said sums of $69.24, $125.00 and $150.00, paid by him to Mollie Pickens, John J. Davis and John Bassel, respectively; and that, as said parties received it from him with knowledge of the source from which it was derived and all the circumstances, above referred to, so much of the decree as relates to said sums will be affirmed.

As said Dayton received said sum of $1000.00 and paid it to Mollie Pickens before the filing of said second amended bill, he stands in a different situation as to it. It cannot be said there was any pending suit with reference thereto at the time he received the money and he, therefore, violated no duty. For this reason, the decree should have required Mollie Pickens alone to pay said sum; and, in so far as it requires A. G. Dayton and Mollie Pickens to pay to Susan C. Dent $1,000.00 with interest thereon from the 12th day of May, 1892, until paid, the same must be reversed and a decree entered here, requiring said Mollie Pickens to pay said sum, with interest thereon as aforesaid, to said Susan C. Dent.

A cross-assignment of error is predicated on the refusal of the court to require the defendant A. G. Dayton to pay over to the plaintiff a balance of the Coburn debt, amounting to $376.97, part of which he retained on account of his fees as attorney for Dever Pickens, and the residue of which he ap-

plied on costs due from his client. That matter is not now before this Court, for the reasons assigned in disposing of other assignments of error as to matters not brought up by the appeal.

*Affirmed in part. Reversed in part.*