# CHARLESTON

PEOPLE'S BANK OF WILKESBARRE v. COLUMBIA COLLIERIES CO. *et al.*

Submitted June 16, 1914.    Decided December 15, 1914.

1. LIS PENDENS—*Purchase Pending Suit—Notice of Prior Sale—Rights of Buyer.*

    A purchaser of stock and bonds, with actual notice that his vendor has contracted to transfer them to another and that suit is pending for the specific enforcement of such contract, takes title subject to the contract and the judgment in the suit. (p. 313).

2. SAME—*Application of Rule—Suit for Specific Performance—Contract to Sell Corporate Stock.*

    In a suit maintainable for the specific performance of a contract for the sale of corporate stock, the rule *lis pendens* applies. (p. 314).

3. SPECIFIC PERFORMANCE—*Corporations—Contract by Sole Stockholders.*

    Where one owns all the stock in a corporation and has contracted

with another to cause real estate of the corporation to be conveyed to the latter, it is within the power of the party owning all the stock and so contracting to carry out corporate action consummating such conveyance, and in a suit for specific performance, no rights of creditors of the corporation being involved, equity will compel him to fulfill the contract. (p. 316).

Appeal from Circuit Court, McDowell County.

Suit by the People's Bank of Wilkesbarre against the Columbia Collieries Company and others. From decree for complainant, defendants appeal.

*Modified and Affirmed.*

*Anderson, Strother & Hughes* and *Vinson & Thompson,* for appellants.

*G. W. St. Clair* and *Sanders & Crockett,* for appellee.

ROBINSON, JUDGE:

This suit was once before here on appeal, under the style of *Lathrop* v. *Columbia Collieries Co. et al.,* 70 W. Va. 58. The change in name is accounted for by the death of Lathrop and revival of the cause in the name of his testamentary trustee. The opinion written on the former appeal must be read as part hereof. It discloses the character of the controversy, and our determination of certain principles having to do with the present appeal.

When the case was here before it merely turned on a demurrer to the bill. The decree of the court below, sustaining the demurer and dismissing the bill, was reversed. We distinctly held that the bill on its face made a case for specific performance of the contract involved, not only as to the land but also as to the stock and bonds embraced by the contract. When the case went back, an amended and a supplemental bill were filed, but these did not change the substantial phase of the case and are immaterial for present notice other than that they were in place. The various separate demurrers by the defendants may also be passed over with the remark that we find no error in the overruling of the same. Nor shall we particularly differentiate as to the many separate answers of the defendants. It suffices to say that issue was made on the

bill. The cause proceeded to proof and to final hearing. The court was of opinion that the cause was for plaintiff and entered a decree accordingly.

Mainly and substantially we have the case as we had it before, except that issue has been made on the bill and the parties have submitted proof pro and con. The principal question we now have is whether plaintiff has maintained the issue.

In many parts of the extended brief filed for defendants, it is argued that our former decision is wrong. Defendants still insist on a different construction of the contract than we gave it, and in other particulars challenge our holdings. That decision was made after much careful consideration, and was then reviewed on application for rehearing, which was refused. Now, for a third time, again we have freely given the same questions consideration. The result is the same. We are still satisfied with the decision. It must stand as the law of this case and similar ones.

There is a new feature of the case, which we must set forth. While the former appeal was pending in this court the Southwest Virginia Trust Company, which had executed the contract to Lathrop that is sought to be specifically enforced herein, sold all of the stock and bonds of the Columbia Collieries Company to the Central Pocahontas Coal Company. That the last named company at the time it so purchased had actual notice of the pendency of the suit, and of the contract with Lathrop in relation to the same stock and bonds, is unquestionably established. The trust company delivered all the stock and bonds to the Central Pocahontas Coal Company, for the sum of $95,000, and the purchaser agreed to take the risk of this suit. So for $10,000 more than Lathrop had contracted to pay, the trust company turned over to another the very stock and bonds it had obligated itself to turn over to Lathrop by the contract sought to be enforced in this suit. It was certainly a good bargain for the trust company as far as the financial phase was concerned. What a court of equity may think of it in conscience is another thing. From a purely financial point of view the trust company could well afford to disregard its contract with Lathrop.

It could well afford to take a handsomely increased price when the purchaser assumed the burden for its disregard of the prior obligation that was violated. The seductiveness of the proposition is a factor in a solution of the equitable rights that we are to consider.

After the trust company had delivered all the stock and bonds to the Central Pocahontas Coal Company the latter company carried out what it meant to be a new organization of the corporate entity of the Columbia Collieries Company. This was done by transfers from the total 300 shares of the capital stock of the Columbia Collieries Company which the Central Pocahontas Coal Company had taken over from the hands of the trust company. One share was made to stand in the name of each of seven individuals, all in some way connected with the Central Pocahontas Coal Company. The remaining 293 shares were left to stand in the name of that company. By a corporate organization growing out of such a standing of the stock, all of the bonds which had been delivered over with the stock were cancelled, and a lease of the lands for mining purposes was made to the Central Pocahontas Coal Company. Possession was taken under the lease by the last named company, and it proceeded to mine coal from the premises until inhibited therefrom by an injunction obtained in this suit on the supplemental bill.

The 293 shares of the capital stock continued to stand in the name of the Central Pocahontas Coal Company from the date of the reorganization referred to, October 1, 1909, that being the day following the purchase made from the trust company, until February 6, 1912. Under the last named date the books of the company show a distribution of the 293 shares by transfers to a number of persons. These transfers were made soon after the service of the summons to bring in by an amended bill the Central Pocahontas Coal Company as a party to the suit, indeed on the day before the amended bill was filed. Evidently method prompted these transfers, for it appears that the various parties to whom the transfers of stock were made were all in a way related to the Central Pocahontas Coal Company. We are led to believe that these transfers, and any sales of the stock they may

represent, were made so that the amended bill seeking to follow the stock in the hands of the Central Pocahontas Coal Company, which company took it over with actual notice of Lathrop's rights, would not find it there, but in the hands of subsequent purchasers who might better shield themselves against attack as to the ownership of the stock. Such is a fair inference from the record.

The decree complained of declares that the Central Pocahontas Coal Company did not under the circumstances become the owner of the 300 shares of the capital stock of the Columbia Collieries Company, nor did anyone claiming under it, and adjudges that the lease made to the Central Pocahontas Coal Company was not authorized by the rightful stockholders of the Columbia Collieries Company, and is therefore void. The decree further adjudges that the Central Pocahontas Coal Company did not become the rightful owner of the bonds which that company took over from the trust company and cancelled, and proceeds to restore these bonds to their original status. It orders that the land mentioned in the contract be conveyed by the Southwest Virginia Trust Company and the Columbia Collieries Company to plaintiff, and that the stock and bonds be transferred and set over to plaintiff.

(1)    By the contract entered into by the trust company with Lathrop the stock and bonds of the Columbia Collieries Company were rightly his. He had by notice converted the option contract into one binding the trust company to perform its provisions and had done all he was required to do until the trust company further complied. It failed to act, and this suit demanded compliance on its part. Notwithstanding the pendency of the suit seeking compliance, the trust company sold the stock and bonds to another company quite as fully advised of Lathrop's rights as was the trust company. As between the vendor and the purchaser equity will promptly cancel such a transaction and not allow it to stand in the way of the enforcement of the contract in favor of Lathrop. We held on the former appeal that under the circumstances of the case the contract wherein it relates to

the transfer of the stock and bonds was subject to specific enforcement in equity.

Under the circumstances of this case plainly it would not be equity to protect the Central Pocahontas Coal Company in its purchase of the stock and bonds from the trust company, made with full knowledge of Lathrop's rights. As to the Central Pocahontas Coal Company the doctrine of *lis pendens* adverted to in the argument does not apply. It is a question of actual notice. That the Central Pocahontas Coal Company had actual notice can not be gainsaid. Its contract with the trust company expressly embraced the chances of this suit then already pending for the enforcement of the prior contract between the trust company and Lathrop. The doctrine of actual notice is more certain and effective than the doctrine of *lis pendens*. Where a purchaser of property, real or personal, is made by one with actual notice of the pendency of a suit relating thereto, the purchaser unquestionably takes subject to whatever decree may be made in the suit. 25 Cyc. 1452. With the full knowledge that the Central Pocahontas Coal Company had when it dealt with the trust company, the former could take no better title than the latter had. A purchaser with notice of Lathrop's rights could only take subject to those rights. Certainly we need not employ much language on this subject. *Lynch* v. *Andrews,* 25 W. Va. 751.

(2) But those to whom the Central Pocahontas Coal Company transferred shares of the stock are not parties to this suit. We can not, therefore, adjudge as to them on the question of actual notice, even if the record shows that as purchasers or as transferees they also had notice of Lathrop's rights. Are they subject to the rule *lis pendens?*

It has long been a mooted question whether *lis pendens* applies to personal property. In England it is now settled that *lis pendens* is only applicable to real estate. *Wigram.* v. *Buckley,* L. R. 3 Chy. Div. (1894) 483. In this country there is a great diversity of authority on the subject. The tendency has been toward extending the rule to personal property except negotiable instruments. Bennett on Lis Pendens, sec. 83; Freeman on Judgments, sec. 194; 56 Amer. St. Rep. 862.

In the Virginias *lis pendens* has generally been considered applicable to personal property. 2 Tucker's Commentaries, 448; 2 Barton's Ch. Pr. 1039; *Bowlby* v. *DeWitt*, 47 W. Va. 323; *Osborn* v. *Glasscock*, 39 W. Va. 749; Opinion of Judge GREEN in *Bruff* v. *Thompson*, 31 W. Va. 16. By this court the rule has been recognized as applicable to non-negotiable choses in action where the plaintiff in the case has acquired a lien or hold on the property involved, by the institution of his suit to set aside a fraudulent transfer, or in some other way. *Dent* v. *Pickens*, 59 W. Va. 274.

Though the property involved in this case is corporate stock, it is not negotiable in the sense that a transferee may take complete title regardless of any equity of another in it. The suit is one for specific performance of a contract, maintainable extraordinarily in this instance as to personal property. We have seen that plaintiff's equitable right to an enforcement of the contract must prevail over a sale of stock made by the trust company under such circumstances as to be in effect fraudulent upon Lathrop's rights. The suit is not only one directly affecting specific property, as must be the case for the rule *lis pendens* to apply, but it is also one asserting a right as against a transfer of the property which is virtually fraudulent, to which latter character of suit the rule is declared applicable in *Dent* v. *Pickens, supra.* Though the suit is not one to charge the property with debt, as in the case cited, it is to get in the very property by a superior right of Lathrop to the same, and we can see no reason why the rule out of the broad policy underlying the same does not apply in the one case as well as in the other. In the case before us plaintiff asserts a hold on the property, of such character and under such circumstances that equity will consider it virtually equivalent to a lien.

Moreover, *lis pendens* is ordinarily applicable to specific performance suits. True, those suits usually affect land. But where stock or other personal property is of the character or value that it may be the subject of a suit ordinarily affecting land wherein *lis pendens* is applicable, it would seem that the rule should be likewise applicable to the personal property which equity by taking cognizance of in a specific perform-

ance suit has deemed of equal dignity to land as far as the specific enforcement of a contract in relation to the property is concerned. It is only infrequent that corporate stock may be made the subject of a suit for specific performance, but when such property may be, all the rules and remedies ordinarily applicable to such a suit should follow.

Since *lis pendens* applies as to the parties to whom the Central Pocahontas Coal Company transferred shares of the stock, it was of course unnecessary to make them parties to the suit. *Wick* v. *Dawson,* 48 W. Va. 469.

Neither the Central Pocahontas Coal Company nor the parties to whom it transferred shares took such title to the stock as to interfere with the enforcement of Lathrop's contract. Actual notice bound the company; *lis pendens* the other parties. Equity must consider the stock as still in the hands of the Southwest Virginia Trust Company, capable of being used by it for the fulfilment of the contract.

(3) The decree appealed from recites a finding from the evidence that all the capital stock and the outstanding bonds of the Columbia Collieries Company "were delivered to Central Pocahontas Coal Company by the Southwest Virginia Trust Company at a time when the Southwest Virginia Trust Company was under contract obligations to deliver all of said certificates of stock and all of the said bonds to the plaintiff." The finding is clearly sanctioned by the evidence. It therefore appears that it was within the power of the trust company to comply fully with all that was demanded by the suit. The trust company had the stock of the Columbia Collieries Company and thereby controlled the property of that company so that it could have executed the covenant even to causing the conveyance of the property called for by the contract. The trust company so had the stock that it could transfer the same to the Central Pocahontas Coal Company and therby enable the latter company to obtain a lease of the property. Surely, if it was within the power of the trust company to do this, it was quite as much in the power of that company by the use of the stock to enable Lathrop to take title to the property of the Columbia Collieries Company. It is said that defects of title to the land

excused compliance with the Lathrop contract. We held on the former appeal that the trust company was obligated to clear the title of defects. It seemed possible to do so. Besides, Lathrop by the bill chose to take the portion of the land that was clear of defects of title, with an abatement of the purchase money. But about all this we need not now concern ourselves. During the progress of the suit the question of the soundness of the title has disappeared and is no more involved.

Not only does it appear that the trust company could have complied with the Lathrop contract at the time that company transferred the stock to the Central Pocahontas Coal Company, but it convincingly appears from the evidence that there never was a time theretofore, from the date of the Lathrop contract, that the trust company did not have the power to cause a conveyance of the property of the Columbia Collieries Company to be made to Lathrop and then to turn over the stock and bonds to him as evidence of the regularity and strength of the title so conveyed. It is insisted that the trust company was not the sole stockholder of the Columbia Collieries Company. We think it was. Equity looks more liberally on things than does the law. True, a small minority of the shares stood on the books in the names of others. But those others were officers of the trust company, and viewing the evidence as a whole, we are firmly of the opinion that they held the stock only for the trust company, in the formality of keeping up a corporate organization of the Columbia Collieries Company. Convincing facts and circumstances lead us to hold that at the date of the Lathrop contract and thereafter to the time of the transfer made to the Central Pocahontas Coal Company, the trust company was in truth the sole stockholder of the Columbia Collieries Company. It virtually so represented in the contract made with Lathrop, wherein it is recited that the trust company "owns and controls the property" of the Columbia Collieries Company. Fishburn and Godwin, as officers of the trust company negotiated and signed the contract. They are two in whose names stock appeared on the books of the Columbia Collieries Company. Immediately upon Lathrop's giving

notice of his acceptance of the contract executed to him, a meeting of the directors of the trust company was held at which a resolution ratifying the contract was adopted and spread on the records. Fishburn, Godwin, Stone, and Woods were present as directors of the trust company. They were the only parties in whose names the minority shares appeared on the books of the Columbia Collieries Company. The resolution which they took part in adopting without dissent on their part recited that the trust company "is owner of the entire capital stock and bonded indebtedness of the Columbia Collieries Company." Their taking part in the adoption of such a recital is totally inconsistent with personal ownership by them of the very stock to which the resolution referred. This circumstance, as well as others to which we need not refer, sufficiently overcomes the weak and qualified claim which they make in their testimony to personal ownership of the stock appearing in their names. We do not invoke their action in this particular as an estoppel. We invoke it as evidence. It tells what in truth appears from the whole case, that the trust company owned all the stock, and that there was absolutely nothing to interfere with its use of the same in complying with the Lathrop contract. The trust company readily owned all the stock and delivered it over when the additional ten thousand dollars came along from the Central Pocahontas Coal Company.

Perhaps the most insistent argument made on behalf of defendants is that the Columbia Collieries Company did not execute the contract that was made to Lathrop and that its property can not be taken thereby. Much is said about the statute of frauds and constitutional inhibitions as to deprivation of property without due process of law. These considerations do not have place in the case. This suit is to compel the trust company to cause a conveyance of the property owned by the Columbia Collieries Company to be made to Lathrop or his assigns and to turn over with the conveyance the stock and bonds of that company. The trust company is bound. It was the owner of all the stock of the Columbia Collieries Company. It could certainly contract as it did in relation thereto. Therefore the stock is bound.

If by the binding of the stock the property of the Columbia Collieries Company is thereby set over to another even without its having signed a contract for the sale of the property, we are quite sure the statute of frauds is not violated and that the corporation is not deprived of its property without due process of law. All the stock surely represents and stands for all the corporate property. If one owns all the stock in a corporation, he equitably owns all the property of the corporation, subject of course to superior equities by creditors. But no rights of the creditors arise in this case. It simply comes to this: The Southwest Virginia Trust Company owned all the stock of the Columbia Collieries Company and contracted with Lathrop to cause the property of the Columbia Collieries Company to be conveyed to him. The trust company by voting all the stock which it holds can readily take the necessary corporate action within the Columbia Collieries Company and direct the conveyance to be made. The trust company has the legal title in its power through its equitable title. It can readily cause the deed to be made. Will not equity compel it to do so? Certainly it will, quite as readily as it will compel one who has contracted to convey title to land which he holds only by contract or title bond to use the instrumentality that he holds to set over the title in compliance with the contract.

The decree is erroneous in one particular. It orders the Southwest Virginia Trust Company and the Columbia Collieries Company to execute a deed to plaintiff conveying the lands owned by the latter company. This is neither consistent with the contract to be enforced nor with a proper view of the procedure obtainable in this suit for its enforcement. The trust company does not own the land, nor did it contract to make a deed for it. Its contract to be enforced is that it will cause the land to be conveyed to Lathrop or his assigns. As we have seen, it has, as sole stockholder of the Columbia Collieries Company, not as owner of the land of that company, power to carry out this contract and that equity will compel it to do so herein. But it is beyond the case for the court to decree that the trust company shall do something it did not contract to do, and something it is unable

to do effectually because it has no title to the land. Nor is it proper to decree that the Columbia Collieries Company shall make a deed for the land. It is not a party to the contract. It occupies in this case simply a relation like this: The single owner of all its stock has covenanted that he will cause its land to be conveyed to another. All this the sole owner of the stock may do by voting the stock for a sale and conveyance of the property and carrying out full corporate action of the Columbia Collieries Company consummating the conveyance. Thus a deed is made by the Columbia Collieries Company, but that is because its sole stockholder is bound to use the stock in causing the same to be done, not because the Columbia Collieries Company as a corporate entity is bound, for it is not.

The decree must therefore be modified. That will be now here done by striking therefrom all within the order in relation to the execution of a deed by the Southwest Virginia Trust Company and the Columbia Collieries Company and by substituting therefor an order and decree that the Southwest Virginia Trust Company, as sole owner of the stock of the Columbia Collieries Company, do, by assembling itself in stockholders meeting of the latter company, vote the stock for a sale and conveyance of the land of that company to plaintiff, as assignee of Lathrop, pursuant to the contract on which this cause is based, and further as such stockholder cause its vote to be carried into effect by the execution of a deed from the Columbia Collieries Company to plaintiff, after which the Southwest Virginia Trust Company shall turn over to plaintiff all the stock and bonds of the Columbia Collieries Company as the decree further directs.

Plaintiff cross-assigns error, complaining that the chancellor did not adopt a proper measure of damages for the coal mined from the land by the Central Pocahontas Coal Company, and did not therefore allow plaintiff a sufficient sum in this particular by way of abatement of the purchase money. It suffices, we think, to say that upon mature consideration of all the facts and circumstances in evidence we are of opinion that the chancellor adopted a safe and fair

standard, and that we are not disposed to disturb the finding. Equity seems to have been done in this regard.

An order will be entered modifying the decree in the particular mentioned as hereinbefore set forth, and as so modified the decree will be affirmed.

*Modified and Affirmed.*